55 So.2d 741 (1951)
UNITED STATES CASUALTY CO. et al.
v.
MARYLAND CASUALTY CO. et al.
Supreme Court of Florida, en Banc.
October 5, 1951.
Rehearing Denied December 15, 1951.
*742 Heskin A. Whittaker, Orlando, for appellant.
Maguire, Voorhis & Wells, Orlando, for appellees.
HOBSON, Justice.
This is a workmen's compensation case wherein there was conflicting evidence before the Deputy Commissioner upon the question of whether an injury sustained by Louis A. Livingston on April 14th, 1949, *743 was an aggravation, and a manifestation of the continuance, of an injury which he suffered in the course of his employment on a prior date, to-wit: June 11th, 1948, or a new accident and a new injury.
The Deputy Commissioner, the only arbiter before whom the witnesses appeared and testified, found as a matter of fact that the accident of April 14th, 1949, was one from which an injury evolved that "was the result of the prior injury of June 11th, 1948, and a manifestation of the continuance of that injury and an aggravation of said prior injury."
Upon appeal to the full Commission, the Deputy Commissioner's findings and award were affirmed.
This order of affirmance was appealed to the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. The Circuit Judge who heard the appeal reversed the order of affirmance which had been entered by the full Commission, and in his order stated, "I do not think it can be said that from the evidence as a whole that the second injury (April 14th 1949) was a recurrence of the first (June 11th, 1948) or a result of it; but the evidence shows that the April 14th, 1949, incident was in fact a new accident and a new injury."
On June 11th, 1948, Maryland Casualty Company was the carrier while on April 14th, 1949, the United States Casualty Company occupied such position. Thus it may be seen that if the accident of April 14th, 1949, "was in fact a new accident" and resulted in "a new injury", the United States Casualty Company was responsible for the medical expense incurred by claimant on account of such injury. On the other hand, if, as was determined by the Deputy Commissioner upon the conflicting evidence which he heard and evaluated, said accident produced an injury which was but an aggravation and a manifestation of the continuance of the former injury, the Maryland Casualty Company was responsible for the medical expense incurred by claimant.
It is crystal clear that our burden upon this appeal is to determine for the benefit of the bench and bar, as well as the Florida Industrial Commission, just what weight the full Commission should give to the Deputy Commissioner's findings of facts when such findings are before said Commission at the time it performs its statutory duty of considering "the matter upon the record * * *." (Italics supplied.) In considering this matter we should also decide whether under existing statutory law we should adhere to our pronouncement that "the probity of the evidence is for the Industrial Commission to determine and their findings should not be reversed unless shown to be clearly erroneous." (Italics supplied.) See Sonny Boy's Fruit Co. v. Compton, Fla., 46 So.2d 17, 18, and cases cited therein.
We believe the confusions wrought by our opinions developed by virtue of the fact that after the 1941 amendments to Sections 440.25 and 440.27, Florida Statutes 1941, F.S.A., we inadvertently continued to follow our earlier pronouncement that "the probity of the evidence is for the Industrial Commission to determine and their findings should not be reversed unless shown to be clearly erroneous", and failed to consider the amendments of said sections which were made by the legislature during its 1941 session. Prior to said amendments the law provided: "The hearing may be conducted by a deputy commissioner, or by any member of the Commission * * *" and that "If an application for review is made to the Commission within seven days from the date of notice of the award, the full Commission shall review the evidence or, if deemed advisable, as soon as practicable, hear the parties at issue, their representatives and witnesses * * *." Laws 1937, c. 18413, § 11. (Italics supplied.) As amended, the law reads as follows: "The hearing shall be conducted by a deputy commissioner * * *" (italics supplied) and, in lieu of the provision that the full commission might hear the witnesses and in effect conduct a hearing de novo, it was provided by the 1941 amendment that "The full commission shall consider the matter upon the record as prepared and certified by the deputy commissioner * * *." (Italics supplied.)
*744 Section 440.25, supra, as amended, in addition to providing that the hearing shall be conducted by a deputy commissioner further provides that such deputy commissioner shall "within twenty days after such hearing determine the dispute in a summary manner." He is then empowered to make an award, designated in the Act as the "compensation order;" and if no interested party makes or files an application for a review thereof by the full Commission within seven days after said compensation order is filed in the office of the Commission at Tallahassee, such order shall become final. Thus it may be seen that under the law now existing and which existed at the time the instant matter was first lodged with the Florida Industrial Commission, the deputy commissioner is charged with the duty of not only holding a hearing and making findings of facts, but it is also his obligation to enter the compensation order. Consequently, his position under the law is somewhat analogous to that of a Chancellor, and the full Commission occupies a position which in many ways is similar to that of an appellate court. After the deputy commissioner has held a hearing, made his findings of facts and entered the compensation order and a review is requested, the full Commission should adhere to the findings of fact so made by the deputy commissioner unless there is no competent substantial evidence to sustain them. This is so because of the aforementioned fact that under the law the deputy commissioner is the only person charged with the burden and responsibility of hearing the witnesses and making findings of facts. It is patent that the full Commission functions much in the same manner as does an appellate court, although it is quasi judicial rather than strictly so.
There is a difference under existing law between the positions of a deputy commissioner and the full Commission, and those of a special master and a chancellor. The chancellor, of course, should give due consideration to the findings of facts made by a special master and should consider the many advantages which the master had in personally hearing and observing the witnesses. Harmon v. Harmon, Fla., 40 So.2d 209. However, although the Chancellor may use the services of a special master (he is not required to do so) and receive from him his advisory findings and recommendations, the fact remains that it is the Chancellor who under the law is charged with the duty and responsibility of making findings of facts and entering the final decree. He may, if he deems it necessary, conduct a hearing de novo as the full Commission under the old law was authorized to do. It is the Chancellor's decree just as it is the deputy commissioner's compensation order which becomes final by lapse of time, absent an appeal or request for review.
Evidently in those cases which were decided by this Court subsequent to the 1941 amendments, our attention was not called to the impact of such amendments on our former rule as to the weight to be given by the Circuit Court to the Commission's findings of facts, that is, that such findings should not be overruled if there was competent substantial evidence to support them. Under the law as it existed prior to 1941 it was the full Commission which was charged with the duty and responsibility of making findings of facts and of entering its compensation order. Chapter 18413, Laws of Florida 1937. The analogy between the duties and responsibilities of the full Commission, prior to 1941, and those of a chancellor is apparent.
Under the law as it presently exists, the full Commission, the Circuit Court and this Court must evaluate the evidence upon a consideration of a cold typewritten transcript which was not the case with the full Commission before the enactment of the 1941 amendments for it, under the original law, had the same right that a chancellor has consistently possessed to call in the witnesses or additional witnesses and conduct a hearing de novo. Moreover, it was required to use the services of a deputy commissioner. The reasons which gave rise to the rule, that this Court should not substitute its judgment for that of the chancellor or jury and reverse the findings of facts made by either unless there is no competent, substantial evidence which sustains them, exist whenever any person or *745 group of persons may be clothed with authority to hear testimony and charged by law with the duty of deciding questions of fact.
Any fact-finding individual, group or board created as such by lawful authority is at least acting in a quasi-judicial capacity and as such fact-finding arbiter his, or its, findings are entitled to great weight and should not be reversed unless there is no competent, substantial evidence which supports such findings. See Nelson v. State, ex rel. Quigg, 156 Fla. 189, 23 So.2d 136. In connection with this principle it is not at all significant that "a case" as contemplated in and by our Constitution does not come into existence until the award reaches the Circuit Court for review. See South Atlantic S.S. Co. of Delaware v. Tutson et al., 139 Fla. 405, 190 So. 675. Such fact does not destroy the reasons for the rule. However, as we have frequently held, the ruling of the full Commission does not reach the Circuit Court with a presumption of correctness, Florida Forest and Park Service v. Strickland, 154 Fla. 472, 18 So.2d 251, as is true when "a case" is before this Court on appeal, but the Commission's judgment upon review of the Deputy Commissioner's findings and award should be tested by the Circuit Court in the manner hereinafter outlined when it is clear that the answer to the question presented depends upon an appraisal of conflicting evidence.
We have not failed to consider the suggestion that many workmen's compensation cases turn upon a proper evaluation of medical testimony. However, in those cases the "substantial evidence" rule should not be disregarded because the Deputy Commissioner may observe leads, not apparent upon an examination of the transcript of the evidence, which point unerringly to the correct findings of facts. After all, doctors are human. They may be appraised as witnesses and their testimony evaluated, in much the same manner as other witnesses and their testimony are judged and estimated. Doctors vary in degree of ability, as do lawyers, scientists, executives, educators, clergymen and other professional as well as every-day business men. The fact-finding arbiter is usually in a better position than the reviewing body to judge the ability, experience and reputation of the various so-called expert witnesses who appear personally before him and to determine the weight which should be given their testimony. One doctor may have a long list of degrees behind his name, while another has but few. However, the latter might, by his demeanor on the witness stand and by his freedom and clarity of expression, disclose a familiarity with the subject under discussion which far exceeds that of the obstensibly better educated theorist. We are of the opinion the "substantial evidence" rule should be invoked in all cases. Even in cases which must be resolved upon a true appraisal of testimony of medical experts, the deputy commissioner's findings of facts should be upheld unless there is no competent, substantial evidence, which accords with logic and reason, to sustain them.
It is our view that under existing law the full Commission when reviewing a matter which has been heard by a deputy commissioner should give to his findings of facts about the same weight that this Court is required to give to the findings of facts made by a Chancellor, and the full Commission should not reverse the findings of facts made by a deputy commissioner unless it is made to appear that those findings of facts are not sustained by competent, substantial evidence.
Upon appeal to the Circuit Court that tribunal should bear in mind the last stated rule in determining whether the order of the Commission should be affirmed, reversed or altered, or the cause remanded to the Commission for further proceedings, but said Court is not now to be guided by the rule that it should not reverse the findings of the Florida Industrial Commission unless there is no competent, substantial evidence to support them. It is the duty of the Circuit Court to determine whether the full Commission observed the "substantial evidence" rule when the deputy commissioner's findings and compensation order were before said Commission for review as provided by statute, our former adjudications rendered after the 1941 amendments *746 of Sections 440.25 and 440.27, Florida Statutes, F.S.A., to the contrary notwithstanding.
Applying the rule pronounced herein to the situation which confronts us in the instant case, we are constrained to hold that the Circuit Court did not determine whether the full Commission observed the "substantial evidence" rule with the result that the findings of facts made by the Deputy Commissioner and affirmed by the full Commission were reversed by said Court upon a consideration only of the "cold typewritten" record which contains conflicting evidence. We find in the record competent, substantial evidence which supports the findings of facts made by the Deputy Commissioner. Consequently, our judgment must be one of reversal.
Reversed.
TERRELL, Acting Chief Justice, THOMAS, ADAMS, and ROBERTS, JJ., and OGILVIE, Associate Justice, concur.
CHAPMAN, J., dissents.
CHAPMAN, Justice (dissenting).
This is a workmen's compensation case originating in the Circuit Court of Orange County, Florida, the Honorable M.B. Smith, Circuit Judge, presiding. As we study the record, the facts are not conflicting nor in serious dispute except the record discloses conflicting views in the medical testimony. The Industrial Commission adopted one view of the medical testimony and entered its award thereon. On appeal to the Circuit Court, the presiding Judge approved the opposite view of the medical evidence and reversed the award of the Industrial Commission. An appeal therefrom has been perfected here.
The claimant, Louis A. Livingston, was employed by The Southern Company as a salesman. The insurance carrier of the employer from July 1, 1947, through June 30, 1948, was the Maryland Casualty Company. On the afternoon of June 12, 1948, Mr. Livingston, in the regular course of his employment, sustained an injury to his back. When injured the claimant was delivering a case of beer weighing less than fifty pounds to a customer of The Southern Company. He stooped over to set down the case of beer and felt a sudden sharp pain in his back. On the following day he went to Dr. Jackson, who treated him and prescribed the wearing of a brace or sacro-iliac belt. Claimant Livingston lost no time from his work because of the injury, and after 24 hours had no pain and went on with his usual employment. It was the claimant's custom to wear the brace only when on duty. The costs of Livingston's injury, inclusive of the sacro-iliac belt, were paid by the Maryland Casualty Company. It was Dr. Jackson's view that claimant had a sacro-iliac sprain. He did not have a ruptured disc.
The United States Casualty Company was the insurance carrier of The Southern Company from July 1, 1948, until June 30, 1949. The claimant Livingston, on April 14, 1949, in the regular course of his employment, delivered a case of beer to a customer of The Southern Company. When he stooped over to pick up the case of beer on the warehouse floor he felt a sudden sharp pain in his back. The pain continued to increase in its intensity. The pain was felt in his left leg and was so severe that he could not move his leg. This pain originated in the region of his back where it first developed on June 12, 1948. Dr. Simensky had the involved portion of claimant's back X-rayed and thereafter expressed the view that the claimant's injury was a ruptured nucleus pulposus of the fifth lumbar space,  also it was a recurrence of the injury sustained on June 12, 1948.
If the injury sustained on April 14, 1949, was a recurrence of the old injury which occurred on June 12, 1948, then our holding in Brewer v. Pan American Airways, Inc., 156 Fla. 812, 24 So.2d 521, is applicable and the costs of claimant's treatment will fall on the Maryland Casualty Company rather than on the United States Casualty Company. The Court below reached the conclusion that the claimant's injury sustained in the course of his employment on April 14, 1949, "was in fact a new accident and a new injury". The *747 Court, in part, said: "Due to the testimony of the doctors, and particularly that of Doctor Jackson who attended Mr. Livingston in prior years and who treated him on June 12, 1948, I do not think it can be said that from the evidence as a whole that the second injury (April 14, 1949) was a recurrence of the first (June 11, 1948) or a result of it, but the evidence shows that the April 14, 1949 incident was in fact a new accident and a new injury."
Counsel for appellant point out that since the Full Industrial Commission made its determination of the probity of the evidence and the record reflects substantial competent testimony to sustain the award of the Full Commission, then a Circuit Court, when reviewing the order on appeal as provided by statute, has no power or authority to make new and independent findings based on the testimony in the record and enter a judgment of reversal of the Full Commission. The case of Sonny Boy's Fruit Co. v. Compton, Fla., 46 So.2d 17, is cited as authority to sustain this view. See McCall v. Motor Fuel Carriers, Inc., 155 Fla. 854, 22 So.2d 153; Crawford v. Benrus Market, Fla., 40 So.2d 889. An answer to the following question may be determinative of the contention of counsel for appellant: May a Circuit Judge, when reviewing on appeal an award entered by the Florida Industrial Commission in a workmen's compensation case, make his own determination of the probity of the evidence, as well as the applicable law, and enter such an order or judgment as appears to accord with the law and the facts?
The Florida Industrial Commission was created by an Act of the Legislature and it possesses such power and authority as has been conferred on it from time to time by statutory enactments. It has only administrative or quasi judicial power. The judicial power by our Constitution is vested in the several courts of Florida. An award of the Full Commission, in its last analysis, is the final order of an administrative board exercising quasi judicial power conferred by statute and the cause becomes for the first time "an original judicial controversy" when an appeal has been taken from the award of the Industrial Commission to the Circuit Court. It does not come from the Industrial Commission to the Circuit Court on appeal with a presumption of correctness of the administrative determination of fact.
Regardless of the language used in Sonny Boy's Fruit Co. v. Compton, McCall v. Motor Fuel Carriers, Inc., and Crawford v. Benrus Market, supra, our holding in Florida Forest and Park Service v. Strickland, 154 Fla. 472, 18 So.2d 251, 255, is controlling. This Court, speaking through Mr. Justice Sebring, in part said:
"When a case comes to the circuit court for review of an administrative order the circuit court is required to consider the case on the record and enter such order or judgment as appears to accord with the law and the facts. In considering the case on the record, no presumption obtains in favor of the correctness of the administrative determination of fact, but the circuit court should give to the findings of the commission about the same weight and consideration which a chancellor should properly give to the findings of law and fact of a master. Firestone Auto Supply & Service Stores v. Bullard, 141 Fla. 282, 192 So. 865; Dixie Laundry et al. v. Wentzell, 145 Fla. 569, 200 So. 860; City of St. Petersburg et al. v. Mosedale, 146 Fla. 784, 1 So.2d 878."
See Food Machinery Corp. v. Baldwin, 136 Fla. 369, 186 So. 796; South Atlantic Steamship Co. of Delaware v. Tutson, 139 Fla. 405, 190 So. 675; Dupree v. Elleman, 139 Fla. 809, 191 So. 65; Cone Bros. Contracting Co. v. Massey, 145 Fla. 56, 198 So. 802.
In Florida Forest and Park Service v. Strickland, supra, we further said:
"Where a final judgment has been entered by the Circuit Court, the presumption exists, in the absence of anything in the record to show the contrary, that there is sufficient competent proof in the record to sustain it. Williams v. Phiel, 60 Fla. 272, 53 So. 638. Consequently, the burden is on one appealing from a judgment of the circuit court in compensation proceedings to show clearly that the court has arrived at an erroneous conclusion *748 not warranted by the record. Firestone Auto Supply & Service Stores v. Bullard, supra; Dixie Laundry et al. v. Wentzell, supra; City of St. Petersburg et al. v. Mosedale, supra."
See City of Lakeland v. Burton, 147 Fla. 412, 2 So.2d 731; Forehand v. Manly, 147 Fla. 287, 2 So.2d 864; City of St. Petersburg v. Mosedale, 146 Fla. 784, 1 So.2d 878; Moorer v. Putnam Lbr. Co., 152 Fla. 520, 12 So.2d 370.
The record reflects that the Circuit Judge simply reviewed on appeal the administrative order of the Industrial Commission and entered such an order or judgment as to him appeared to accord with the law and the facts. He concluded "that from the evidence as a whole that the second injury (April 14, 1949) was (not) a recurrence of the first (June 11, 1948) or a result of it but the evidence shows that the April 14, 1949, incident was in fact a new accident and new injury." I find in the record substantial competent evidence as given by Dr. Jackson to sustain the conclusion of the lower court. The lower court recited the reasons for accepting as controlling Dr. Jackson's testimony rather than the conflicting testimony as given by another physician. The appellant failed to establish reversible error on this record, therefore, I think the judgment of the lower court should be affirmed.