#### OECHSNER v. FOUR BRANDS, Inc., et al. (No. 2).

Circuit Court, Dade County, Civil Appeal.

April 24, 1953.

Victor Levine & Robert H. Heilker, Miami, for appellant.

Robert F. Underwood of Knight, Smith, Underwood & Cullen, Miami, for the employer and insurance carrier, appellees.

Rodney Durrance, Tallahassee, for the Commission.

CHARLES A. CARROLL, Circuit Judge.

This is an appeal from an order of the Florida Industrial Commission dated December 4, 1952, affirming the order of a deputy commissioner dated August 14, 1952.[1]

1 Order of P. N. HIATT, Deputy Commissioner, August 14, 1952:

This cause originally came on before me on February 12, March 6 and April 3, 1951. I heard the testimony of the employee and her witnesses, including J. Waldo Leon, employee of the owner of the building who was the claimant's immediate superior and building manager, Marie Medina, the passenger in the elevator with the claimant at the time of the alleged happening, and Raymond Citron, a tenant in the building. Her medical witnesses were Dr. Andrew G. Brown and Dr. Henry Blum, both of whom testified before me. I also heard the testimony of the witnesses for the employer and carrier who were Edmund Luster, chief inspector of elevators for the city, Donald Ross, service elevator man for the Otis Elevator Co., and Dr. Christian Keedy, a neurosurgeon appointed by me as deputy commissioner to examine the claimant and report his findings.

I also made my own personal investigation of the elevator on which the accident is alleged to have happened, and personally measured the distance from the first floor level of the building to the point where the elevator (the undercarriage and crossbar) would engage the buffer springs located at the base of the elevator shaft. I found this distance to be 15 inches. In other words, the elevator could slide no more than 15 inches from the level of the ground floor to the final resting point.

The only way the elevator, from a mechanical point of view, could have "dropped" or "fallen" in its descent to the ground level would have been for all of the cables, which connected the elevator to the counter-weights, to have broken. This did not happen.

If the brakes had been released and the power turned off at the time of the happening on November 6, 1950, the counter-weights of the elevator would have carried the elevator upward—under the weight thereof.

Upon such evidence and investigation I found in an order dated May 24, 1951, that there had been no accident within the meaning of section 440.02(19), Florida Statutes 1951. In so finding I necessarily disbelieved the claimant's testimony to the effect that the elevator fell four floors, gaining speed in its descent and without stopping at the ground floor hit five feet below the street level with a sudden thud, and bruised her "all over" and injured her. My reason for not accepting as credible her testimony and the testimony of her witnesses, Waldo Leon and Raymond Citron, pertaining to the alleged accident, was my observation of the demeanor of those witnesses and their apparent personal interest in the recovery of an award. Some of their testimony was absolutely refuted by physical mute evidence. The claimant's testimony was itself contradictory in many respects.

The only witness for the claimant who seemed to be worthy of belief as to the

On the first appeal (by order filed April 21, 1952) this court reversed the order of the commission which, in effect, had denied relief to the petitioner on the finding of a deputy commissioner that the elevator which she was operating had not been involved in any accident, etc. This court, in its first order and opinion, concluded that such finding was "clearly erroneous and contrary to the preponderance of the evidence."

Instead of restating in this order the matters which were stated in the prior order to show the decision of this court as to the factual

happening was the passenger, Marie Medina. She appeared to have no interest in the outcome of the case and no personal relationship with the parties to influence her testimony one way or the other. She gave a very straightforward and credible explanation of the happening.

On review of said order and the record the circuit court reached a contrary conclusion, found that there was an "accident," and has remanded the case to me as deputy commissioner—"for further proceedings not inconsistent with" the opinion of the court. As I construe the order of the court I am to make findings as to the alleged personal injuries which might be the reasonable result of the said "accident" as indicated by the record.

As deputy commissioner I accordingly make the following findings of fact based upon the testimony of the witnesses which I have heard, and first, as to the basis for personal injuries. The elevator in question, which was being operated by the claimant, descended without any noticeable deviation from a normal descent from the fourth floor of the building to the ground floor level. When it reached the ground floor level it momentarily stopped and before the operator, the claimant, could open the door the elevator slid 15 inches below the ground level and came to rest on the buffer springs, without bouncing and without noticeable injury to anyone. The claimant did not lose her balance or fall against or hit any part of the elevator. "In a few seconds" the operator had the elevator back to the ground level and the passenger departed therefrom.

Second, as to alleged personal injuries. The following findings, as to the personal injuries alleged to have been sustained as a result of the accident, are based on the foregoing findings of fact as to the happening as distinguished from the claimant's contention that the elevator fell four floors, gaining speed in its descent and without stopping at the ground floor hit five feet below the street level with a sudden thud. I find that:

1. The claimant sustained no personal injury to her eyes by reason of the happening on November 6, 1950. This is based on the testimony of Dr. Andrew G. Brown, an eye, ear, nose and throat specialist, and witness for the claimant.

2. The claimant sustained no injury to her head or neck by reason of the happening. She had high blood pressure which was not caused by trauma. This condition could have accounted for her headaches, but, if aggravated by the happening referred to, such aggravation was temporary and caused no permanent aggravation or permanent acceleration of the disease process. This is based on the testimony of Dr. Christian Keedy, neurosurgeon, who was selected and appointed by me as deputy commissioner for the purpose of examining the claimant and reporting his findings.

3. On and prior to November 6, 1950, the claimant was a very nervous woman and was in "the throes of the menopause." This is based on the testimony of Dr. Henry Blum, her personal physician who had treated her since 1947 and who appeared as her witness.

4. Her dizzy spells, pain in her head and the alleged difference in her eyesight, and sleeplessness, were not caused by the happening referred to. This finding is based on the absence of any substantial evidence in the record to support a contrary finding. These complaints reasonably could be accounted for by the fact that she was "in the throes of the menopause period," or by reason of her high blood pressure, or a mental or nervous condition that was due to fright or excitement by reason of the elevator sliding 15 inches below the ground level to the buffer springs below. These, however, are not injuries by accident arising in the course of her employment, and are not compensable. See City Ice & Fuel Division v. Smith (Fla.), 56 So. 2d 329, at page 330.

It is therefore ordered that the claim of Madeline Sophia Oechsner be and the same is hereby dismissed.

Order of the Industrial Commission, Chairman RAYMOND E. BARNES, Commissioners JAMES A. HARPER and J. C. PACE, December 4, 1952:

Affirmed on authority of United States Casualty Co. v. Maryland Casualty Co. (Fla.), 55 So. 2d 741, and Town and Crescent City v. Green (Fla.), 59 So. 2d 1.

situation and the directions which were given for further proceedings, attention is called and reference is made to the said order of this court on the prior appeal.

Consideration of whether the injuries or disabilities are compensable through connection and causation by this elevator accident or incident is one of the matters to be determined below. That decision may be made in favor of petitioner or it may be made against her, but the decision should be made with reference to the matter as found and decided in this court's opinion and order dated April 21, 1952, and not on the original rejected findings of fact of the deputy commissioner; and it appears that the last order of the commission was based on the initial findings which this court has rejected or on substantially the same findings contrary to what this court had ruled and notwithstanding this court's ruling on the matter. Careful reading of the deputy commissioner's first order, then of this court's opinion reversing and then of the deputy commissioner's second order shows that his determination on the question of causation as to the injuries may not have been based on the factual basis determined by this court of paramount jurisdiction, but on the factual basis as determined by himself, which was different therefrom.

The order now appealed from is reversed, and the cause is again remanded for further proceedings not inconsistent with this order, and not inconsistent with the order on the first appeal which was filed in the clerk's office in this court on April 21, 1952.

There is hereby allowed $200 as attorney's fees, for his services on this appeal, for the attorney of record for the appellant-petitioner, to be payable if and in the event in the further proceedings herein directed an award is made to the petitioner.