DREW, Justice.
The order of the full commission sought to be reviewed in these proceedings reversed an order of the deputy commissioner [1] on the ground that the deputy *2 commissioner’s findings of fact were not supported by competent substantial evidence which accorded with logic and reason, and that the order did not accord with *3 the essential requirements of law within the meaning of United States Casualty Co. v. Maryland Casualty Co., Fla.1955, 55 So. 2d 741.[2]
*4 Those portions of the order of the deputy commissioner in which he arrives at the conclusions overruled by the full commission read as follows:
“9. That the claimant has been unable to work since the accident of November 10, 1955, although I find that he had acquired an earning capacity before the accident, in spite of his severely injured back.
“10. That the claimant’s accident of November 10, 1955 aggravated the pre-exist-ing back condition which he had, worsening this previous condition to such an extent that he could no longer work at all. The claimant is, therefore, permanently and totally disabled by reason of his industrial accident of November 10, 1955, and is entitled to receive compensation for such disability from the Manufacturer’s Casualty Company, the carrier at the time of the accident, at the rate of $33.00 per week.”
The evidence was uncontroverted that the petitioner could work and did work for this employer prior to the injury which arose out of and in the course of his employment. Therefore, that portion of the case, a necessary precedent in support of a workman’s compensation[3] claim, need not be considered further here.
We now come to the crux of this review. The real issue is whether the deputy commissioner’s order meets all the required tests of validity in holding that there was an aggravation of the pre-existing back condition of the petitioner worsening this previous condition to such an extent that petitioner could no longer work.
Testimony and company employment records revealed to the deputy commissioner — and it is so reflected in his order —that petitioner worked up to November 10, 1955, the date he suffered his occupationally incurred injury, and could work no longer. The testimony of Dr. Keedy, properly considered by the deputy commissioner in his order along with other medical and lay testimony,[4] and which was apparently ignored by the full commission in their attempt to revaluate the testimony is so vital to this review it must be quoted:
“ * * * The part which I feel that that accident caused is a tugging and pulling on this scar tissue now which has further aggravated a pre-existing condition, a condition pre-existing this other, which was actually a superimposed sprain of his back, has caused a persistent radiculitis, that is, irritation of the nerve roots, going down into the left leg.
“Q. Since that time, I note in your reports we don’t find any report of muscle spasm in there. Would that show an improvement?
“A. Oh, from time to time, you know, on bed rest and so forth, he rests a lot, that would go away.
“Then he gets up and moved around and pulls on this scar tissue, and one thing and another, and it comes back again. So his *5 muscle spasm, I believe, is an intermittent thing. Some days in my office he shows it and other times he did not.
“Q. From your examinations, you felt that this man, based on your examinations of him, is not able to work, am I correct about that?
“A. Yes, sir.”
Thus we have before us an order of the deputy commissioner in which he considers and weighs all the evidence, including the opinions of those physicians relied on by the petitioner and those called by the employer. The full commission in its attempt to make independent findings based upon its review of the record — which was an adequate record in every respect — fell into error [5] by its treatment of Dr. Keedy’s statements regarding the petitioner’s disclosure of his previous lay history. This specialist was able to determine medically the injury caused an aggravation of a preexisting condition leading to inability to work.
The very nature of the evidence in this case, involving as it does, the truthfulness and credibility of the employee’s testimony ■ — not only before the deputy but as a basis for the findings of Dr. Keedy, was peculiarly within the province of the deputy to evaluate. He had the parties before him, could see and hear them, and, in the light of his experience in such matters, come much nearer a proper evaluation of the evidence than the full commission on a cold written record. Moreover, as we read the order of the full commission, and the language in which it is couched, particularly the use of the adjective “alleged” when referring to the accident which forms the basis for the claim, and which was never disputed by anybody, the view is justified that the error of the full commission in evaluating the evidence itself may have been unconsciously influenced by doubts that there actually was an accident.
For these reasons the writ is granted and the order of the full commission is quashed and set aside with directions to affirm the order of the deputy commissioner.
THOMAS, C. J., and TERRELL, HOBSON and THORNAL, JJ., concur.

. “After due notice to the parties, a final hearing on the above entitled claim was conducted by the undersigned Deputy Commissioner at Miami, Florida, on December 22, 1958 and March 8, 1959.
“Upon consideration of the evidence presented in respect to said claim, the undersigned Deputy Commissioner finds:
“1. That the Florida Industrial Commission has jurisdiction of the parties and the subject matter.
“2. That the claimant, George Holland, received an injury to his back while serving in the United States Army in 1943. Due to this injury, he was given a medical discharge on December 12, 1944. For several years following his discharge from the Army, he received medical treatment from the Veterans Administration for this back injury, including three operations for herniation of an in-tervetebral disc and spinal fusion. As a result, Mr. Holland was rated by the Veterans Administration as a case of one hundred percent permanent disability.
“3. That on November 10, 1955, the claimant was injured by an accident arising out of and in the course of his employment for Puritan Dairies, Inc. when he received a severe shock while making a telephone call to his employer.
“4. Following the accident of November 10, 1955, the carrier paid the claimant’s medical bills incurred as a result of this accident, and paid him temporary total compensation from December 16, 1955 to June 13, 1958. On the latter date, the company ceased making pay *2 ments to the claimant resulting in the filing of this claim.
“5. The claimant’s average weekly wage at the time of his accident was $55.00 per week, entitling him to Workmen’s Compensation at the rate of $33.00 per week.
“6. That during the time that Mr. Holland was in and out of the hospitals, and prior to his ultimate discharge from the Veterans Administration Hospital in Dade County, he was able to pursue his previous occupation as a physiotherapist and at times performed other odd jobs.
“Following his final discharge from the Veterans Administration Hospital in 1952, he worked as custodian of the Holy Cross Lutheran Church, located in Dade County, where he performed all the duties of this position efficiently and in a commendable manner. On April 21, 1953, he resigned his job as custodian, and went to work for the Riverside Memorial Chapel, where he worked regularly as night clerk until September, 1954.
“In February, 1955, claimant went to work for Puritan Dairies, Inc., the employer in this case, at a salary of $40.00 per week. He was chosen from a large number of applicants, and placed in charge of one of the employer’s ice cream stores. He worked for this employer for a period of thirty five weeks prior to the accident out of which this cause arises. During this thirty five weeks, he was raised in pay from $40.00 per week to $55.00 per week. He put in numerous hours of overtime, and on many occasions worked double shifts and seven days a week. During the period of time which claimant worked for Puritan Dairies, Inc., ho worked regularly, except for two brief periods when he was receiving medical treatment for his old back injury. On one of these occasions, he was hospitalized in the Hialeah Hospital for several days. This was three months' prior to his accident of November 10, 1955, and following this period of hospitalization, he returned to work for Puritan Dairies, Inc. and performed his regular duties continuously until this accident.
“7. Dr. Irwin Perlmutter, Dr. J. W. Barrett and Dr. Christian Keedy testified during the course of the hearing in this cause. Both Dr. Barrett and Dr. Perlmutter testified that they had examined Mr. Holland prior to his November 10, 1955 accident and that he had a severly injured back prior to his accident of November 10, 1955. Dr. Barrett also testified that he saw Mr. Holland again following the second accident for an examination, and that, in his opinion, the claimant’s condition was the same on his second examination as it had been on the occasion when Dr. Barrett examined him while he was in Hialeah Hospital some three months prior to the accident of November 10, 1955. Dr. Barrett, however, according to his testimony, did not actually have an opportunity to examine Mr. Holland at the time that he saw him at the Hialeah Hospital. Both Dr. Keedy and Dr. Perl-mutter testified that, although Mr. Holland’s condition was serious prior to his accident on November 10, 1955, it was not such that he could not work, nor was it such that his back condition could not be worsened by another accident.
“8. That the claimant was under the care of Dr. Christian Keedy between the period of April 25, 1956 to the time of the hearing in this cause. On September 19, 1957, according to Dr. Keedy’s testimony, the claimant had ceased to show further improvement, and he rated him with a forty percent permanent partial disability. Dr. Keedy testified that it was his feeling that Mr. Holland should have a rhizotomy or cordotomy for the purpose of relieving some of his pain which he has in his low back.
“9. That the claimant has been unable to work since the accident of November 10, 1955, although I find that he had acquired an earning capacity before the accident, in spite of his severely injured back.
■ “10. That the claimant’s accident of November 10, 1955 aggravated the preexisting back condition which he had, worsening this previous condition to such an extent that he could no longer work at all. The claimant is, therefore, permanently and totally disabled by reason of his industrial accident of November 10, 1955, and is entitled to receive compensation for such disability from the Manufacturer’s Casualty Company, the carrier at the time of the accident, at the rate of $33.00 per week.
“11. That the claimant is entitled to receive medical treatment for his injuries resulting from the November 10, 1955 accident, and to reimbursement of any and all medical bills related to these injuries which have been paid for by him or which remain unpaid, including hospital and medicine bills and his trans *3 portation expenses to receive this needed medical treatment.
“12. That the claimant at the time of this hearing is forty-five years of jjgg ‡ ‡ tfc if

. The pertinent portions of the order of the full commission read as follows:
“ * * *
“The claimant received an injury to his back while in the service during the year, 1943. He subsequently had operations for a herniated intervertebral disc and a spinal disc. The Veterans Administration rated the claimant as being 100 per cent permanently and totally disabled. On November 10, 1955, the claimant alleges that he sustained an injury when, while making a telephone call to his employer, he received an electrical shock which caused him to fall, thus aggravating his pre-existing back condition. Payment of compensation was initially instituted by the carrier and claimant was paid compensation for temporary total disability and furnished remedial treatment until June 13, 1958, at which time same was suspended. Subsequently, the claimant filed a claim for additional workmen’s compensation benefits. The Deputy Commissioner entered an Order finding claimant to be permanently and totally disabled as a result of the accident and awarded compensation accordingly.
“In our opinion, the Order of the Deputy Commissioner should be reversed and the claim dismissed on the ground that there is no competent substantial evidence which accords with logic and reason to sustain the instant award under review. The Deputy Commissioner had to rely upon the testimony of one Dr. Christian Keedy in finding that the alleged accident occurring in November of 1955 aggravated the claimant’s preexisting back condition, but, and this is important — Dr. Keedy first saw the claimant on April 25, 1956, over five and one half months after the accident, and he emphasized in his testimony that any opinion he gave was based solely upon the history given to him by the claimant. A portion of this history was an allegation that the claimant had no significant pain in his left leg before the November 1955 accident, but thereafter had severe pain in the lower left extremity. Dr. Keedy emphasized that claimant’s primary difficulty previous to the accident was that of pain in the right lower extremity and the doctor admitted that it would be significant if the claimant, in fact, had primary pain in his left leg and foot prior to the accident, as this would mean that the nerve root irritation causing the pain in the left leg was not necessarily due to the alleged November 1955 fall. He also admitted that claimant’s condition could worsen without having been aggravated by any fall. We think this is significant. According to the Veterans Administration records in evidence, the claimant was examined on July 27, 1955, some three and a half months before this alleged accident and at this time, he complained of wnbearaMe pain down his left thigh and left leg, extending to his big toe. As far back as 1953, the claimant had been complaining of pain in both legs, including ‘an electric like’ sensation extending down the sciatic nerve to the great toe of his left foot. We also note that two and one half months prior to the alleged accident of November 1955, the claimant had been admitted to Hialeah Hospital, where he complained of severe pain in the left hip, back, and down the left lower extremity. Dr. J. W. Barrett, who was the treating physician at this time, felt that a cordotomy was indicated for the purpose of relieving pain. Dr. Irwin Perlmutter, who examined the claimant approximately twenty days prior to the alleged November 1955 accident, testified that at that examination the claimant was complaining of back pain radiating down the left side since May of 1955. Thus, Dr. Keedy has based his opinion upon an erroneous history given to him that prior to the alleged accident in November of 1955, that the claimant had no significant pain in his left leg. Since Dr. Keedy admitted that a doctor who had examined the claimant both prior to and subsequent to the accident would be in a much better position to judge the effect of any alleged accident with respect to claimant’s present condition, and further, since Dr. Keedy based his opinion upon an erroneous history, there is no competent substantial evidence to support the Deputy’s findings, when weighed against other medical evidence in the record. We think the rule stated in Arkin Construction Co. v. Simp-kins, Fla.1957, 99 So.2d 557, is applicable in the instant cause.
“Having considered the cause upon the record, briefs, and oral argument of counsel for the parties, and it appearing that the Deputy Commissioner’s findings of *4 fact are not supported by competent substantial evidence which accords with logic and reason, and that said Order does not accord with the essential requirements of law, within the meaning of United States Casualty Co. v. Maryland Casualty Co., Fla.1951, 55 So.2d 741, it is
“Ordered that said Order of the Deputy Commissioner dated June 26, 1959, be and the same is hereby reversed and said claim for workmen’s compensation benefits is hereby dismissed.
“Done And Ordered at Tallahassee, Leon County, Florida, this December 14, A. D. 1959.”

. F.S.A. § 440.02(6):
“(6) The term ‘injury’ means personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury.”
“ * * * it was intended only to require the claimant to make a showing of some event or circumstances connected with his work to which his injury can be directly attributed, * * * ” Gray v. Employers Mut. Liability Ins. Co., Fla. 1953, 64 So.2d 650, 651.

. This is a responsibility of the deputy commissioner. Andrews v. C.B.S. Division, Fla.1960, 118 So.2d 206.

. Berke Displays, Inc. v. Mick, Fla.App. 1959, 114 So.2d 425, 427.
“It is incumbent upon the deputy to make findings of fact before the entry of a compensation award. See § 440.25 (3) (b), Fla.Stat., F.S.A. The commission is then limited to a review of these findings in order to determine whether they are supported by competent substantial evidence. If the record is insufficient to support the deputy’s findings, the commission should remand the cause to the deputy for further findings but cannot make independent findings based upon its review of the record. Ball v. Mann, Fla.1954, 75 So.2d 758; Foxworth v. Florida Industrial Commission, Fla.1955, 86 So.2d 147.”