CARLTON, Justice.
In this workman’s compensation case, we are primarily concerned with an alleged connection between injuries to a claimant’s left leg sustained in a work-related accident, and an outbreak of cancer in that leg approximately thirteen months thereafter. In January 1968, respondent-claimant Hobbs was driving a police car when he was involved in an accident with another car at an intersection. As claimant lurched forward on impact, his left leg hit the left front door. Claimant reported to the investigating officer that he was experiencing pain in his left knee and his left thigh. No injuries were visible; the pain was in the nature of a “Charley horse.” No medical treatment was sought.
The claimant testified below that his pains disappeared within two weeks after the accident. He said that about five months later, he began to experience aches in his thigh whenever he had been standing for a considerable period of time, such as when he played golf. He further testified that a noticeable swelling of his left thigh appeared in November and that his discomforture increased steadily until he consulted physicians in February 1969.
His first treating physician diagnosed that a blood clot was possibly the cause of the discomfort. The rest and medication prescribed failed to effect a cure. Claimant was then referred to Dr. George Fipp, an orthopedist. This latter physician tentatively diagnosed a soft tissue tumor in the left thigh; a biopsy confirmed that claimant was afflicted with rhabdomyosarcoma, a form of malignant tumor of a striated muscle. The left leg was amputated by Dr. Fipp and a claim for compensation was lodged below.
The claimant’s theory was that the accident of January 1968, had given rise to an incipient tumor which did not manifest itself until February 1969, or later. The employer and its carrier defended on the grounds that the tumor was not causally related to the accident; that proper medi *562 cal reports were not filed; that the employer and carrier had no notice of injury; and, that the medical treatment was unauthorized and not properly the responsibility of the employer or carrier.
After considering the testimony and depositions entered below, the Judge of Industrial Claims determined that the claim was valid. It was also determined that defects in notification and in the filing of reports was not a bar to the claim since the manifestations of the disease were not discoverable until February 1969. The Full Commission majority affirmed on the principle that it would not substitute its judgment for that of the Judge below. But the dissenting Commission Member strongly urged that the judgment affirmed by the majority was not supported by competent, substantial evidence.
We are in agreement with the dissenting Commission Member. The judgment that the accident of January 26, 1968, was causally related to the onset of rhabdomy-osarcoma was not supported by competent, substantial evidence. In Harris v. Josephs of Greater Miami, Inc., 122 So.2d 561, 562 (Fla.1960), we stated the rule applicable today: “There must be some clear evidence rather than speculation or conjecture establishing a causal connection between a claimant’s injury and her [his] employment.”
Rhabdomyosarcoma is a rare form of cancer about which little is known except that it progresses rapidly. Dr. Ashbel C. Williams, a cancer specialist, was a consultant called into the case by the Hobbs family. In Dr. Williams’ deposition, he responded to the question whether trauma sustained as the result of the accident could have caused the disease.
“My opinion would be that it probably did not have any relationship to the onset of the malignant tumor. However that again is a matter of conjecture and there is no way in the world to prove it, one way or the other.”
Dr. Fipp, when given similar questions, gave the same answer. We offer these examples :
“Mr. Robinson: ‘With respect to the mass that you found in Mr. Hobbs, do you have an opinion as to its cause, the cause of this mass ?’
“Dr. Fipp: T don’t know what caused this tumor.’ ”
‡ % ‡ ‡ ■%.
“Mr. Robison: T take it you don’t connect the tumor with the accident that the man related to you as far as causal connection goes ?’
“Dr. Fipp: ‘Correct.’”
The Judge of Industrial Claims was aware of this testimony, but he was persuaded that it did not conclusively rule out any causal relationship because the physicians could not in conscience make an absolute statement that no relationship was possible, no cause being known to medical science. Note, for instance, that on cross-examination by claimant’s counsel this exchange occurred:
“Mr. Cuddy: ‘While you don’t causally connect the tumor with the accident, Doctor, do you feel that in light of your previous statement that you don’t know and it is not known what causes cancer, that it is also correct that you can’t causally not connect the turner with the accident?’
“Dr. Fipp: ‘That’s correct.’ ”
Although Drs. Fipp and Williams could not absolutely deny a causal relation, the tenor of their commentary clearly demonstrated that they consistently lent little credence to the causal connection idea. Moreover, they succeeded in raising barriers to claimant’s theory which were not overcome by competent, substantial evidence. Mr. Hobbs said that his knee and thigh were sore for about two weeks after the accident, but that he felt no further *563 discomfort for five months. In early summer, he began to have aches if on his feet for a long time. By November he thought swelling had occurred; the tumor was not noticeable to physicians until February. Dr. Fipp described the two-week period following the accident as consistent with the “Charley horse” type of bruise sustained on impact. But Dr. Fipp and Dr. Williams could not reconcile the admitted five-month pain-free period and the subsequent period of several months of occasional aches, with the cancer. Dr. Fipp in his deposition stated that no interim period was known between the onset of cancer for whatever reason and its detectable stages. He also stated that a characteristic of rhabdomyosarcoma was rapid growth and that it would be readily detectable within a matter of weeks. Dr. Williams said that the longer the lapse between the time of the accident and the time of the appearance of the tumor, the less significant any possible connection would become. As to Mr. Hobbs’ case, Dr. Williams said: “That’s quite a long lapse [13 months], I think, to be significant as to trauma being the cause.”
In future times, when our science has searched out the causes of rhabdomyosar-coma, or when a causal connection can be made to appear, a similar case might lead to a different result. But considering that Drs. Fipp and Williams were the only physicians heard from below, we cannot say that under the facts of this case, a judgment for the claimant is supported by that quality of evidence required under all workmen’s compensation cases by U. S. Casualty Co. v. Maryland Casualty Co., 55 So.2d 741 (Fla.1951).
Accordingly, certiorari is granted, the order reviewed is quashed and the cause is dismissed.
It is so ordered.
ROBERTS, C. J., and ERVIN, ADKINS and BOYD, JJ., concur.