62 So.2d 748 (1952)
MIAMI RETREAT FOUNDATION et al.
v.
ERVIN, Atty. Gen., et al.
Supreme Court of Florida, Special Division B.
December 19, 1952.
Rehearing Denied February 9, 1953.
*749 Bell & Bell, Brown and Koller, and Francis M. Miller, Miami, and J. Lewis Hall, Tallahassee, for appellants.
Richard W. Ervin, Atty. Gen., George E. Owen and Mallory H. Horton, Asst. Attys. Gen. and Sibley & Davis, Miami Beach, for appellees.
FABISINSKI, Associate Justice.
The background of Miami Retreat Foundation, as outlined in the report of the Special Master appointed by the Court below to make findings in this matter, and which we adopt as sufficient to provide a prologue, is as follows:
"Charles A. Reed and Ruth Reed, his wife, came to Miami, Florida, from the State of Indiana in 1926, with limited assets and began to operate in a small way a private sanitarium for alcoholics, drug addicts and mentally disturbed persons. The sanitarium grew. It was changed twice to the third and present location and prosperity came as the County of Dade and other governmental agencies began sending patients to Mr. and Mrs. Reed's sanitarium. After a time a corporation for profit, Miami Retreat, Inc., was organized and it conducted the sanitarium until some time in 1939 when Miami Retreat Foundation was organized under the laws relating to non-profit corporations, and thereafter all of the property used in the operation of the sanitarium was transferred to Miami Retreat Foundation. Miami Retreat Foundation was a `semi-charitable' corporation in the beginning, but in 1941 the charter was amended and it became `charitable, educational, scientific and non-sectarian'.
"There was and is a need for an institution of the type conducted by Miami Retreat Foundation in this community and it has, at a respectable profit, rendered a real service to the community, especially as to mentally disturbed persons. For a long time there was, and, it is said, at present there is no place in Southeastern Florida to send a mentally disturbed person while he is awaiting transportation to the Florida Hospital for the Insane at Chattahoochee, Florida, except the jail or the Miami Retreat Foundation. Usually it is some weeks after lunacy proceedings before a place is available at Chattahoochee, so while this practice entails a great public expense, at present it appears to be an unavoidable expense, and Miami Retreat Foundation does well in rendering the service in keeping these mentally disturbed people until they can be put in the State Hospital.
"The evidence is convincing that Ruth Reed had at least an equal part with Charles A. Reed in creating what became Miami Retreat Foundation and that she was a donor to the Foundation to the same extent as Charles A. Reed."
The Attorney General, on behalf of the State, acting under authority of Section 617.09, F.S.A., brought a bill in Chancery to annul the franchise of the Corporation, and for incidental relief,  for appointment of receiver to liquidate the corporation, temporary injunction, etc., and added a prayer for general relief.
Principally, the main allegations of the bill of complaint are that the Miami Retreat Foundation is not a scientific institution of learning, that it is not a benevolent or charitable organization and has never engaged in any charities; that on the contrary the Miami Retreat Foundation is engaged solely in the business of operating a private sanitarium for profit, that it has amassed a tremendous profit from its operations consisting of real estate, bonds, cash and other real and personal properties, in excess of *750 $500,000; that all of this property, real and personal, is under the domination and control of the defendant Charles A. Reed, none of which is diverted toward charitable, benevolent work or scientific learning.
Ruth Reed, who was named as a defendant and who is the divorced wife of the Charles A. Reed mentioned above, filed a cross-complaint, admitting the truth of the allegations of the bill of the Attorney General, elaborating upon the method in which the corporation was purportedly used as a cloak to permit her former husband to amass a large fortune without paying taxes on the profits derived from the business, and asserting that she was an equal partner in the venture, and entitled to distribution of one-half the assets after liquidation of the Corporation.
Miami Retreat Corporation, answering the cross-complaint, among other defenses filed a plea of res adjudicata, basing such claim on the final decree of the Court in the divorce action (it having been made a party thereto), and claimed an estoppel by reason of a marriage settlement agreement entered into between the contesting husband and wife, and which settlement was confirmed by such decree. Paragraph 12 of that decree contained the following:
"That the plaintiff, Ruth H. Reed, do forthwith assign, endorse and transfer and deliver unto Charles A. Reed any and all stock certificates now held or owned by her in Miami Retreat, Inc., and shall tender her resignation to any office or directorship she may have in Miami Retreat, Inc., and Miami Retreat Foundation."
Appellee Ruth Reed has accepted all of the provisions for alimony made to her consequent upon confirmation of the settlement agreement, and has also received $5,000 in cash under its terms. Provision was also made for annuity to be paid to her by Miami Retreat Foundation in the sum of $150, should she outlive her former husband.
There are other provisions for Ruth Reed in the settlement agreement and final decree consequent thereupon, of more or less inconsequential nature and not material to our discussion.
There is no serious claim made by appellant that its purposes or functions are educational or scientific within the meaning of Chapter 617, F.S.A., under which non-profit corporations are authorized and exist. Hence the sole issue as between the Attorney General and the corporation, is its character vel non as a charitable organization.
No good purpose would be served by our attempting to analyze and apply the evidence. The Special Master found that under the method of operation in effect in the conduct of the physical establishment of the appellants, it was purely and simply a business operated for profit, and did no substantial charity work. The profits have not inured to the benefit of Charles A. Reed, or to any other person connected with the Corporation, by any division, diversion or payment, but have been allowed to accumulate and have been carefully invested. They are available for future application to some benevolent or charitable purpose, but have not been so applied.
It is provided in the Charter that surplus funds "shall be placed in insured savings accounts or invested in marketable government bonds for safety with moderate income". And by amendment to its original charter there is a provision that "its incorporators, members and directors shall not have any vested right, interest or privilege of, in or to the assets, functions, affairs or franchises of the Foundation which may be transferable or inheritable", and that "this Corporation will not * * * distribute profits or dividends".
The Special Master found as a fact, as to the amount of charity work done by the Foundation, that only 2 1/2 per cent of all patients receive charity, and found as a conclusion of fact that this was inconsequential, and was insufficient in itself to constitute it a charitable organization.
Having made a rather exhaustive study of the law in this and other jurisdictions, as such law has been applied in similar situations, and applying that law to the facts as he viewed them, the Special Master made his findings of law, that the Foundation as operated in practice, as distinguished from its stated purposes, was not a charitable organization. *751 He recommended, however, that instead of proceeding to annul its franchise as a non-profit corporation, the Court require the Foundation to reorganize and function in the manner contemplated by the letter of its Charter. He suggested that this objective might be achieved by requiring the Corporation to increase its Board of Directors to a larger number, and that the additional directors be subject to approval by the Court.
The Court, while accepting the recommendations of the Master in principle, decreed instead that certain directors should be removed from office, and in such decree named successors to fill the vacancies thus created, and gave certain directions to the reorganized board as to the future conduct of the affairs of the corporation. With the exception of one Alfred E. O'Neil, who was a party to this cause below, the persons so removed from office by the Court were given no notice or opportunity for hearing, and the one who was made a party, appellants aver, was no longer a director.
Both the recommendations of the Master, and the action of the Court thereon, are challenged as error on this appeal, and we are constrained to agree with Appellant in this regard.
In the first place, the Special Master states that one of the controlling reasons for his recommendation was that the Corporation permitted the Appellant Reed to control the assets of the Foundation as his own. He states in his report:
"The Miami Retreat Foundation is not a charity because the corporation does not operate. It is merely a name under which Mr. Charles A. Reed does business; it is a receptacle which for him holds money and property. The Board of Directors or Trustees does not function. The assets are not legally his, but Mr. Reed can do what he wills concerning them."
And in another part of his report he says:
"But it is quite clear that Mr. Charles A. Reed, if he cared to, could take all or any part of the cash assets and dispose of them."
If the Master meant that Appellant Reed so controlled the assets that he might accomplish a misapplication thereof, this may be true, just as any executive having direct control of assets of an individual or corporation may conceivably defraud his employer. But the Charter is explicit that the assets of the corporation are irrevocably devoted to the purposes of the Corporation, as heretofore quoted and in addition thereto Appellant Reed has several times in litigation, and otherwise, estopped himself of record to claim any of such assets as his own. He has thus estopped himself in the case now before us. In his own testimony, in argument and in the briefs filed herein counsel for Appellant Reed and Reed himself have committed Reed to the irrevocable position that the surplus assets of the Corporation are earmarked for maintenance, improvement and replacement of the physical assets of the Foundation. In a meeting of the Directors of the Foundation Reed signed minutes containing recitals that the capital stock of Miami Retreat, Inc., was accepted by the Foundation to insure that a certain building owned by Miami Retreat (theretofore held by the Foundation under lease), might be controlled by the Foundation as owners by reason of its ownership of all the stock of Miami Retreat, Inc., to obviate any question of ownership after the death of Reed. There is simply no escape from the conclusion that except for acts of dishonesty, there is no way for Appellant Reed to personally secure for himself the assets of the Corporation, and the Master definitely found that the Corporation had been in the past honestly administered. There is no reason for assuming any other course of conduct in the future.
In the second place, the Master evidently misconstrued the effect of the holdings of Courts of this and other jurisdictions as to the effect of profits made by the Corporation, as distinguished from profits accruing to the founders or contributors to a non-profit corporation. There is nothing inconsistent with the character of a corporation not for profit, that profits result from its operations, if such profits are devoted to the charitable purpose for which *752 it was organized, and the Master specifically found that Appellant Reed, sole (or joint with his wife) founder of the charitable trust here involved, did not profit from its operations beyond a reasonable salary as its operating executive. We can take judicial notice that the cost of building is now at such levels that the surplus liquid assets of the Corporation would not go far in expansion or replacement of its facilities.
The determination of the Master that the amount of charity work done by the Foundation was so inconsequential as to deprive it of its purported character as a charitable organization cannot be disposed of so readily. It seems indeed to be such a pittance that it might well be wholly disregarded. But it is in evidence and uncontradicted that no one afflicted with the type of ailment that the Foundation is designed to accommodate has ever been turned away because such person was unable to pay. And as a matter of fact, most of the persons who would in the normal course of events be admitted as charity patients are accommodated as County patients, and such accommodations paid for by the County. True, they are not received as charity patients, and as a matter of fact, are the chief source of revenue and profit of the Corporation. But in a large measure this accounts for the failure of charity patients to present themselves for admission. Compare The Miami Battlecreek v. Lummus, 140 Fla. 718, 192 So. 211.
While we agree that the evidence certainly demonstrates the dominance of the Corporation by its founder, we are also of the opinion that, human nature being what it is, this is not unusual, or necessarily reprehensible. The sole founder of a charity should certainly be accorded considerable latitude in its administration, and may, without too many strictures, select as his associates persons of his own bent and inclination in regard to the conduct of its affairs. If we are unduly euphemistic in our appraisal of the situation, we qualify such euphemism by our conviction that the conduct of the affairs of the Corporation, though subject to criticism, are not so evil or abhorrent as to warrant the intervention of the Attorney General with his powers of visitation.
Since the bill of complaint must be dismissed, it is unnecessary to determine whether the Court below was justified in removing certain Directors and appointing successors, without notice or hearing.
The third question arises out of the cross-complaint filed by Ruth Reed. The Master concluded that it should be dismissed, while the Court accepted her contentions and decreed that she was entitled to one-half the assets of the Corporation, decreased by the amount of income which has accumulated by reason of the exemption from income taxation granted the Foundation by the Federal Government.
While we gravely doubt that the cross-complaint should have been entertained in the first place, since the bill was one by the Attorney General acting for the State in its sovereign capacity to accomplish a public purpose, we will, as the Court below did, meet the issue and dispose of it, rather than leave it dangling to invite further litigation.
Ruth Reed was named as a defendant as a member of the Board of Directors of Miami Retreat Foundation. Instead of assuming the attitude of a defendant antagonistically, she admitted the allegations of the bill, and by additional allegations in her cross-bill against the other defendants, became an active protagonist in the cause of the Attorney General. In fact, she took the lead in the prosecution of the cause, and at the conclusion of the presentation of her evidence as cross-complainant, the Attorney General adopted her case as his own, offered no evidence, and closed his case. The case made by the cross-complainant was essentially the same as that alleged in her bill for divorce against Charles A. Reed, but in the divorce case a marriage settlement arranged between the parties obviated the necessity for proof of the facts which constitute the evidence on this case.
The divorce terminated in a decree for Ruth Reed, obtained without opposition by the husband, after the property rights of the respective parties had been settled by the agreement already referred to.
*753 In bringing her action for divorce against her husband, Ruth Reed joined as party defendants, Miami Retreat, Inc., Miami Retreat Foundation, and Charles Reed Corporation, Incorporated. The allegations of the bill which justified the joinder of the corporate defendants were that each of them was merely the alter ego of the defendant husband, and in her prayer for relief was included a prayer that the Court adjudicate what properties standing in the name of the several corporations were the property of plaintiff, and that the same be transferred and delivered to her.
"A judgment on merits in a suit between parties on same cause of action by court of competent jurisdiction operates as an estoppel, not only as to matters offered, but also as to every other matter which might with propriety have been litigated and determined in that action." Wolfson v. Rubin, et ux, Fla., 52 So.2d 344, 345.
Counsel for Appellee seek to overcome the force of this principle of law by urging that in the divorce action she had been advised by her then counsel (counsel other than those now appearing for her) that the defense of Miami Retreat, Inc. urged in the divorce action that it was immune from intervention by the plaintiff, the Attorney General or the Court, in its affairs, because it was an arm of the State, a public charity, and because no ground was shown for visitation by the Attorney General, or of its internal affairs by the Court, and for other reasons not pertinent here, was a good and complete defense to her claim against the Foundation, and that the Foundation was immune to the process and was not accountable to her, in those proceedings,  that is, in a divorce action. And they further urge that her counsel was correct in so advising her. In the divorce action she did not, in fact, urge her claim against the Foundation by proceeding further against it, either by offering evidence of the allegations of the bill, or invoking the judgment of the Court upon such allegations.
In the final decree of the Court no disposition is made of the corporate defendants by dismissing them from the action or otherwise, and the Court retained jurisdiction for the purpose of enforcing the decree.
The following provisions of the marriage settlement refer to properties within the control of the Foundation:
"Second: That in the event that the husband shall predecease the wife, the husband has agreed that the Miami Retreat Foundation will pay to the wife, after his death, the sum of One Hundred Fifty ($150.00) Dollars per month for the remainder of her life time and until she has remarried and the husband has furnished the wife with a copy of a resolution passed by the Miami Retreat Foundation in which said Foundation obligates and binds itself to make said payments."
"Fourth: That at the time of the payment of the said Five Thousand ($5,000.00) Dollars in cash, the said wife shall assign, endorse, transfer and deliver unto the said husband any and all stock certificates now held or owned by her in Miami Retreat, Inc., and shall tender her resignation to any office or directorship that she may have in Miami Retreat, Inc. and Miami Retreat Foundation.
"Fifth: That the said wife may remain in the apartment presently occupied by her in the Miami Retreat until June 1, 1947, and shall pay no rent for such occupancy; thereafter she may reside in the apartment known as the 78th Street Apartment until September 1, 1948, without paying rental therefor. Should the said wife decide not to reside in either of said apartments, she shall have the option of renting an apartment elsewhere and the husband will pay one-half of the said rental, provided, however, he shall not be required to pay more than $40.00 per month as his portion thereof.
"Ninth: In the event the said Circuit Court shall enter a final decree of divorce in the aforesaid cause, this Agreement shall be incorporated in, and made a part of said final decree. *754 The parties hereto shall make, execute and deliver any and all documents required of them which may or shall be necessary to further carry into effect the intent and purpose of this agreement."
The agreement concludes with the following paragraph:
"Tenth: Each of the parties hereto hereby solemnly and specifically avers that this agreement has been entered into by her or him without undue influence, or fraud, or coercion, or misrepresentation, or for any cause except as herein specified."
The Special Master, in his report to the Court in the divorce case, said:
"6. The settlement agreement dated September 30th, 1946, acknowledged October 10th, 1946, plaintiff's Exhibit 3, was made after due consultation and with full knowledge of the financial condition of the husband and has been duly executed by the husband and wife and is approved by counsel for the husband and wife, respectively."
The settlement agreement was executed on September 30th, 1946, and acknowledged on October 16, 1946. On October 17, 1946, there was filed with the Special Master a copy of certain Minutes of a Meeting of Miami Retreat Foundation, entitled as being held on an unnamed day in September, 1946, but reciting in its first paragraph that such meeting was held the ____ day of October, 1946, at 11:00 o'clock, A.M. Ruth Reed, then still a member of the Foundation, signed the minutes, with Charles A. Reed as President, and with Alfred E. O'Neil. The following extracts from such minutes are pertinent:
"The following members and Trustees were present:
 Charles A. Reed,
 Trustee and Member,
 Ruth Reed,
 Trustee and Member,
 Dr. Alfred E. O'Neil,
 Trustee and Member.
 Absent:
 Frank E. Reed,
 Trustee and Member,
constituting a quorum, for the transaction of business, and the above consisting of the supervising Trustees and Members of the Foundation.
"The Chairman stated one of the purposes of the meeting was to consider the offer of Charles A. Reed to cause to be assigned to the Foundation 39 of the outstanding 40 shares of the capital stock of Miami Retreat, Inc., which corporation owns the main entrance building now being occupied and used by this Foundation" * * *
"The matter was carefully considered by the Trustee-Members who realized that the Foundation now has the use of its entrance building under an arrangement with Miami Retreat, Inc., under which it pays no rent for the use of this building, but in consideration thereof takes care of the maintenance of said building and all fixed charges connected therewith, but that the Foundation has no definite assurance that such arrangement can or will be continued except during the lifetime of Charles A. Reed.
"The Trustee-Members thereupon, in order to assure the Foundation the continued use of the said main entrance building and eventual ownership thereof through the acquirement of 39 shares of the 40 shares outstanding of Miami Retreat, Inc., and the purchase of its obligations, upon motion duly made, seconded and unanimously carried, adopted the following Resolution:
"Be it resolved: That the members and Trustees of Miami Retreat Foundation do hereby accept from Charles A. Reed the assignment to it of 39 of the 40 outstanding shares of the capital stock of Miami Retreat, Inc., a Florida corporation, which corporation is the owner of the main entrance building now being used by this Foundation, and the assignment of promissory notes owed by Miami Retreat, Inc., of the aggregate face value of $10,903.77.
"The Trustee-Members thereupon considered the life service performed by Charles A. Reed and the transfer *755 to this Foundation caused by Charles A Reed of valuable rights consisting principally of the turning over to it of the going business of Miami Retreat, Inc., which this Foundation is now conducting, and declared that the efforts of Charles A. Reed, together with the transfer of the going business of Miami Retreat, Inc., to the Foundation, as hereinbefore set forth, have made it possible for this Foundation to carry on its activities for the benefit of mankind.
"Upon motion duly made, seconded and unanimously carried, the following resolution was adopted:
"Be it resolved: That in consideration of the life service performed by Charles A. Reed, the Founder of this Institution, and the transfer caused by him, as set forth above, the said Charles A. Reed is hereby granted a pension of $500.00 per month so long as he may live, said pension to be payable to him when he shall determine to retire as active President and Manager of this Institution, and should the said Charles A. Reed die prior to the death of Ruth Reed, his wife, then and in that event there shall be paid to the said Ruth Reed, as a pension, the sum of One Hundred Fifty ($150.00) Dollars per month, provided no pension or money shall be paid to her should she remarry before or after the death of Charles A. Reed.
"Be it further resolved: That a copy of these minutes, under the seal of the Foundation, be furnished to Charles A. Reed and Ruth Reed, and that the pension arrangement set forth herein be, and the same is, a binding obligation on Miami Retreat Foundation which it promises faithfully to fulfil and obligates itself so to do.
"The resignation of Ruth Reed as a Trustee and Member of this Foundation was then discussed and upon motion duly made, seconded and unanimously carried, Ruth Reed's resignation was accepted."
It will be noted that one of the purposes of the meeting was unquestionably that of carrying into effect certain of the provisions of the marriage settlement. And that it was held after the execution of the settlement, and during the pendency of the divorce action. The report of the Master was made and filed in Court on December 2, 1946.
However, the final decree of divorce was not entered until April 29, 1949. The lapse of time had made it impossible to carry into effect some of the provisions of the marriage settlement, but it was expressly ratified, approved and confirmed, except as therein modified. It affirmatively appears from the decree that it was entered upon the application of the plaintiff; while it also affirmatively appears that the defendant husband had filed a motion for rehearing (of what we are not informed), had filed exceptions to the Master's report, and that he had been overruled.
The Court in its decree affirmatively acts in personam upon defendant Miami Retreat Foundation by approving the minutes of the Corporation referred to above; by requiring the Foundation to provide for the annuity of $150 per month, described in such minutes, and by requiring plaintiff to resign from the Foundation.
Under these circumstances we have no doubt whatever that the final decree in the divorce action, having Miami Retreat Foundation as a party defendant, constitutes a complete bar to the relief claimed by Appellee Ruth Reed against Appellants herein. Certainly it cannot be successfully maintained that advice by counsel in the divorce action in any way mitigates against the force of the adjudication made, or which might have been made, upon the allegations of the bill and the prayers for relief.
As a matter of fact, as has been demonstrated by the extracts from the decree recited above, some relief against the Corporation was actually granted. And we see no legal or equitable impediment of any nature which would have in any wise prevented full and complete litigation of the matters set out in the bill of complaint. And if the Court had found that the Foundation was the alter ego of the defendant husband, *756 and that it had in its possession or control any properties of the plaintiff, acquired by her by reason of the marital relation of the contending spouses, or otherwise, the Court had full jurisdiction to order the Foundation to restore them to her.
Even if the foregoing were not conceded, the Appellee would still be barred from relief by her own conduct of record in the divorce case. She entered into a full and complete settlement of her rights in the properties accumulated by the joint efforts of herself and her husband unconditionally and without qualification, unless its was some secret and undisclosed condition or qualification. She made the settlement possible by participating, as a director, trustee, or member of the Foundation, immediately after the execution of the agreement, without insisting on any of the demands made in her bill, except as they were provided for in such minutes, and without raising the issue at such meeting. She herself invoked the action of the Court confirming the agreement. She accepted the avails of the agreement, and secured a reservation of jurisdiction of the Court to enforce the terms of the final decree, and before invoking the action of the Court to enter its final decree, she had over two years to consider the effect of the agreement, to request the Court to cancel or modify the agreement, to press her claims against the corporate defendants, and to take any other measures for relief to which she might be equitably entitled. We find it difficult to imagine any set of circumstances which would bar a plaintiff more effectually than the conduct of the Appellee. In effect, her cross-complaint is a collateral attack upon the final decree in the divorce case, a decree rendered by a Court having full and ample jurisdiction to adjudicate every claim she now advances in this proceeding.
Reversed with directions to dismiss the bill of complaint and the cross-bill of defendant Ruth Reed.
SEBRING, C.J., and ROBERTS and MATHEWS, JJ., concur.