THOMAS, Justice.
We are considering a petition for certio-rari, filed by the employee, and also one by the employer and carrier, to review an on-der of the Florida Industrial Commission *338 which approved an order of a deputy commissioner after modifying it.
The employee, Lillian Forsythe, was injured 29 January 1952 in an accident which arose out of and during her employment with Poinciana Chinaware, Inc. Her injury seemed relatively minor, then complications developed to the extent that attending physicians who in, the beginning thought she was neurotic, finally concluded she was schizophrenic.
The carrier voluntarily paid temporary total disability compensation at the statutory rate for 350 weeks and provided the employee with continuous medical care to such degree that the employee was eventually treated by 16 physicians the last of whom administered to her 18. March 1959.
The petitioners, Poinciana Chinaware, Inc., and American Surety Company, while arguing in their brief that the orders of the deputy commissioner and the full commission were erroneous because the ■' present claim for nursing services was barfed, support the position with the assertion that on 11 September the interested parties.negotiated a settlement of all issues including any claim for nursing services. They contend that an order was entered 18 September ■adjudicating the claim upon its merits based on the stipulation.
Before going to the orders under attack, we pause to analyze the stipulation and the only order before us appearing to approve it. The agreement, signed 11 September 1959, bore the recital that the claimant consequent upon the injury suffered a personality disorder of a permanent and totally disabling character. It was further recited that the parties had entered a stipulation which was approved by then Deputy Commissioner John V. Christie 24 March 1955 the terms of which, except as modified by the present stipulation, were incorporated in it. The first order is not in the record.
There followed a paragraph containing a reference to the total permanent disability of the claimant, but qualified by the divergent views of carrier and claimant, the former maintaining that the disablement extended from the date of injury, and, nota bene, the latter insisting that it began 16 August 1955. It is in the paragraph dealing with this aspect of the case that there appears a reference to composing the disputes of the parties. The precise language is: “[i]n order to settle all pending issues between the parties and to compromise their differences, the parties * * * agree that the claimant became permanently and totally disabled on July 29, 1953, and that she is entitled to * * * compensation * * * from that date.”
The very next paragraph consisted of the statment that the claimant was entitled to “further medical” care as-the nature of her condition required and that the carrier agreed to furnish it upon request.
After a section providing that the Deputy Commissioner, John V. Christie, might decide the question of attorneys! fees it was specified that upon approval of the stipulation by this Deputy Commissioner, the employer through the carrier would pay (1) the agreed compensation, (2) provide the claimant with the future medical care, and (3) pay certain attorneys’ fees.
On 16 September 1959 an order was 'entered by Deputy Commissioner Christie, which is evidently the one said by peti'tioners-employee and petitioners-carrier in their brief to have been dated 18 September 1959 adjudicating the claim on the merits “based on a stipulation.” It carried simply a recital of the stipulation, a finding that the facts were as stipulated, an approval of that agreement and a command that the “parties comply with [its] provisions.”
This background brings us to the point when the present dispute was engendered by a request 30 September 1959, a few days after the stipulation and its approval, that the carrier furnish the claimant with nursing services or some domestic help. Formal request for these benefits was sent two weeks later to the Director of the Florida *339 Industrial Commission and the hearing on the request was heard in July of the following year, before J. H. Kaiser, Jr., successor to Deputy Commissioner Christie.
After considering the issues and the testimony relevant to them, the last deputy entered his order 3 November 1960. He determined that all the household chores had to he performed by the husband and daughters of the claimant because the' claimant was unable to perform them due to her mental condition. He referred to testimony of a psychiatrist that the claimant suffered from schizophrenic reaction with apparent brain, damage which was manifested by “confusion, inability to adjust and quick mood swings,” furthermore, that she “suffered from a marked hostility, irritability and depression.” She had threatened suicide and harm to her husband. He thought she was capable of dressing and caring for personal needs, hut should be placed in an institution if she was not supervised at home. In short, the deputy found that the claimant was in need of constant supervision.
Basing his findings on uncontradicted testimony, he concluded that the claimant should have the services of a practical nurse and that her request for them was reasonable. He ordered the employer through the carrier to pay the amount of $25 weekly as a reasonable charge for the service of a nurse. He prescribed such payments should be computed from 30 September 1959 to such time as a change in claimant’s condition should occur.
The employer and carrier applied to the full commission for a review contending that there was no substantial evidence to support the award of money for any nursing services, or, especially, for an allowance for such services from 30 September 1959 to 3 November 1960, or for any periods pri- or to 19 October 1960. The claimant complained in a cross application that the allotment for nursing services should have been $56 weekly'instead of $25.
When the controversy reached the full commission that body decided that the care required was in a nature domestic but that the primary occasion for it was the prevention of danger to the claimant, herself, and that it transcended service which would ordinarily and normally be furnished by the members of her family. The commission thought it was obvious the husband could hot forgo the earning of a livelihood to stay home and attend his wife and, in the circumstances, the other members of the family could not assume that burden. The commission decided the allowance of $25 by the deputy was adequate.
The commission determined, however, that payments for nursing services should begin upon the employment of some one to perform them or, to state it otherwise, there was no authority for, in effect, compensating the family for the care they had already given the claimant.
Founded on the record we have recounted, the petitioners have presented to us two questions for decision: (1) Were the orders of the deputy and the commission erroneous because the claim was barred? and (2) Was the order of the commission erroneous because of lack of substantial competent evidence to support the deputy’s order?
As we understand the brief, it is the position of the initial petitioners that the order of the first deputy approving the stipulation was a final adjudication of the merits and that inasmuch as the order of the second deputy, entered more than 20 days later, was by nature supplemental, it was one which the deputy did not have the power to execute. Adopting the view that the stipulation, as approved, disposed of all phases of the controversy on the merits, these petitioners then argue that the respondents were estopped from relitigating them.
The principle of law for which they contend has often been recognized, and was clearly re-announced in Miami Retreat Foundation v. Ervin, Fla., 62 So.2d 748. *340 Certainly a judgment on the merits between parties in the same cause of action will operate as an estoppel as to matters offered and matters which could have been litigated and determined. Wolfson v. Rubin et ux., Fla., 52 So.2d 344. But to invoke the rule we would have to accept petitioner’s premise that there was in fact a final judgment. Were we to accept the premise we could embrace the conclusion, but a close study of the stipulation and the order approving it does not convince us that there was such finality of decision by the deputy as to work an estoppel. As we have pointed out, the paragraph of the stipulation dealing with the resolve of issues seems to have been restricted to the nature of the disablement, the term and rate of compensation and the incorporation of medical reports. To repeat, the following paragraph specifying that the claimant was entitled to further “medical care” as her condition should require and committing the carrier to provide it upon request demonstrates that all possible claims were not foreclosed, and that the reference to settlement of disputes should be confined to the paragraph in which it appeared.
We are impelled to decide the first question against the employer and carrier.
In urging the second question the employer and carrier challenge specifically the competency and substantiality of the testimony to establish the necessity for the attention the claimant now demands, United States Casualty Co. v. Maryland Casualty Co., Fla., 55 So.2d 741, and question the accuracy of the findings in this regard. They assert that in respect of “the need for practical nursing services, the record of this case is completely void.” This is a strong contention which the record does not warrant.
In this connection these petitioners state that the Industrial Commission has hitherto adopted the premise that service by a member of the family to an injured person is presumptively gratuitous and no reimbursement is proper unless the one rendering it discontinued employment to do so. We held recently that although relinquishment of employment by a wife in order that she might attend her injured husband was a factor to be considered it was not a prerequisite to payment for her services. Oolite Rock Company et al. v. Deese et al., Fla., 134 So.2d 241,
No testimony was introduced by the employer and carrier. From our study of the record we are convinced that there is abundant competent substantial evidence comporting with logic and reason to support the views of the deputy and commission that the claimant is in dire need of close supervision. The requirements for claimant’s care are far above the attention normally expected of a husband and, as unfolded in the order of the deputy commissioner, it is plain that the circumstances demand that this supervision be handled by an outsider.
The claimant-petitioner insists that error was committed in setting the amount of services at $25 weekly instead of $56 and by the commission in fixing the starting point as the date when the services of a nurse are secured.
We find that neither of these positions is sound. In the first place we have discovered no testimony upon which could have been based a conclusion that $25 weekly would be a proper allowance for compensation of a nurse.
We say this despite the statement in the brief of employer and carrier that the “figure of $25. * * * was not gathered out of thin air by the Deputy Commissioner but was testified to by claimant’s husband to the effect that his sister-in-law would come in and live with them and be the housekeeper for this $25. weekly, plus her keep.” There is no reference to the place in the record where such testimony was present. It is true that the husband indicated he had talked to his sister-in-law about staying with his wife but there is no showing that a definite arrangement had *341 been made. In the brief of the employer and carrier as respondents in the second certiorari proceeding they assert, contrary to the statement in their brief as petitioners, to which we have just referred, “that the Deputy Commissioner made his finding of fact with respect to the reasonable cost of nursing services specifically upon the testimony of Dr. Michael Gilbert. He did not make it upon the testimony of the husband nor upon the testimony of any other witness.” Here, too, there is ño reference to the portion of the record where the physician so testified.
A thorough examination of the record of the testimony of the husband and Dr. Gilbert has revealed no reference to the sum of $25, or any other amount, as reasonable compensation for the care contemplated. Yet the deputy commissioner found that the cost of such services “as outlined by Dr. Michael Gilbert was $25.00 per week” and the full commission recited in its order that “[i]t should be pointed out that the claimant’s husband testified that he had made arrangements for someone to furnish these services for $25 per week.”
Obviously in these circumstances we cannot uphold the orders of the deputy commissioner and the full commission so far as they relate to the value of nursing services for the simple reason that the conclusion lacks the support of competent substantial evidence.
As we stated at the outset the claimant complains about the amount of the allowance because it was $25 instead of $56 weekly and to buttress the contention refers to our decision in Brinson v. Southeastern Utilities Service Co., Fla., 72 So.2d 37. An examination of the original record in that controversy discloses testimony upon which the allowance for service by a wife to her injured husband was based. Moreover the facts in the cited case do not parallel, the ones here.
Only one question remains for determination by this court, i. e., the starting time for the payments for nurse’s care. We find no fault with the order of the full commission that they begin when the nurse starts work. It may seem unfair that this period should come at least two years after the original request, but inasmuch as it is not yet determined what amount shall be sanctioned it seems reasonable that this part of the order should stand, since accumulated payments would' amount to reimbursement-to members of the-family, the husband having testified that he had never paid anybody to care for his wife.
The orders are quashed with directions to proceed in accordance with the views expressed.
ROBERTS, C. J., and TERRELL, DREW and THORNAL, JJ., concur.