99 So.2d 557 (1957)
ARKIN CONSTRUCTION COMPANY and Bituminous Casualty Corporation, Petitioners,
v.
Alvin SIMPKINS, Deceased, Mrs. Katherine Simpkins, Gerald Simpkins and Florida Industrial Commission, Respondents.
Supreme Court of Florida.
October 9, 1957.
Rehearing Denied November 7, 1957.
*558 Edwin H. Underwood, Jr., Miami, and Lawrence G. Lally, Coral Gables, for petitioners.
Nichols, Gaither, Green, Frates & Beckham, Miami, for Alvin Simpkins, Deceased, Katherine Simpkins and Gerald Simpkins.
Rodney Durrance, Tallahassee, for Florida Industrial Commission.
*559 O'CONNELL, Justice.
The widow and minor son of the deceased claimant, Alvin Simpkins, Sr., were awarded death benefits by the Deputy Commissioner. The carrier and employer, Bituminous Casualty Corporation and Arkin Construction Company, petition this Court for writ of certiorari to review the order of the full commission which affirmed the award made by the Deputy Commissioner.
Simpkins, the deceased claimant, was a fifty-five year old carpenter employed by Arkin Construction Company, one of the petitioners. His duties consisted of constructing wooden forms for the pouring of concrete. The forms were made out of plywood sheets weighing from 15 to 20 pounds. Simpkins and a fellow carpenter would use a scaffold to stand upon in order to place the plywood panels in the proper position.
On Thursday, January 26, 1956, at about 11:00 A.M., Simpkins and another carpenter, John Offret, were standing on a scaffold, about five feet above a concrete floor, when it suddenly shifted or collapsed. Simpkins landed in a stooped position with his feet beneath him, skinning the inside of his left leg. Simpkins got up immediately, helped reassemble the scaffold and returned to work, working the balance of the day at his normal duties and at his normal speed.
The following morning, Friday, Simpkins returned to work. He was limping slightly. His supervisor insisted that he go to the company doctor for an examination, which he did. After examination and treatment for the leg injury by the doctor he returned to his work and continued to work the remainder of the day.
At the end of the work day Simpkins went to a Moose Hall near his home and played pool for about an hour and a half. He then went home, ate his evening meal and retired as usual about 11:00 P.M.
At approximately 3:00 A.M. the following morning, Saturday, January 28, 1956, Simpkins' wife was awakened by his heavy snoring. She found him to be perspiring heavily and tried to awaken him. She was unsuccessful and Simpkins died sometime between 3:00 and 3:30 A.M., January 28, 1956.
An autopsy was held. The report thereof lists the death to have been caused by "myocardial failure due to myocardial fibrosis and coronary atherosclerosis with insufficiency." The death certificate listed the immediate cause of death as general visceral congestion.
In addition to the foregoing facts it was established that prior to his death Simpkins, the deceased employee, had been in apparent good health, other than for a sinus ailment. He had not prior to his death, either before or after his fall, evidenced any objective symptoms of heart trouble. One witness for the claimants related a conversation which he claimed to have had with Simpkins at the Moose Hall on Friday afternoon, in which conversation the witness stated that Simpkins, in telling about the accident, put his hand under his heart, but as we construe the record this witness' testimony was stricken. At best the bare statement that Simpkins put his hand under his heart without any other surrounding evidence or conversational background remains in the record.
The Deputy Commissioner had in evidence before him a statement of Dr. Herrero, the doctor who examined Simpkins and treated him for a skinned leg on Friday, the day after the fall
In his statement Dr. Herrero said that Simpkins came to him on Friday, January 27, the day after the fall. He said Simpkins had "an extensive erosion on the inner surface of the left leg and knee, and an abrasion on the left side." The doctor said that Simpkins complained of no other injury nor of pain in any area other than the leg, did not appear to be in pain, was *560 jolly, was not nervous, and did not show any signs of shock or approaching shock. The doctor said Simpkins "was an apparently normal person with a slight injury to the leg." Dr. Herrero, when informed of Simpkins' death, expressed surprise and suggested an autopsy be taken. The report made by the doctor to the carrier for workmen's compensation indicated Dr. Herrero did not examine Simpkins for any heart disease.
John Offret, the carpenter who had been working with the deceased, testified that Simpkins gave no evidence to him of shortness of breath, made no complaints of stomach pain, or other complaint of pain and that except for limping on his skinned leg he appeared normal. Offret testified that after the fall, as before it, Simpkins carried his full load of the work.
There is no dispute that Simpkins' fall and any injury caused thereby is compensable. It is agreed that he died as a result of heart failure. The only question which we are required to answer is whether there is substantial competent evidence in the record to support the finding of the Deputy Commissioner that the fall caused the heart failure.
In addition to the facts above stated the record contains the testimony of two heart specialists, one produced by the carrier, the other by the claimants. Neither of these specialists had examined or treated the deceased. Both had examined the autopsy report and certain reports of medical examinations of the deceased made prior to the fall. Both had the benefit of the facts of this case as above stated.
The specialist produced by claimants stated that in his opinion the fall and resulting pain and tension precipitated or "triggered" the occurrence of the fatal heart attack on Saturday.
The other specialist, produced by the carrier, testified that he did not see "how a fall of that character at that time had anything to do with his (Simpkins') dying quietly in his sleep that much later."
The specialist produced by the carrier felt that the autopsy report did not reveal the exact cause of death and did not suggest a recent change in the heart such as might have resulted from shock. He felt that if the shock from the fall had caused the failure, the failure would have come about more promptly, or at least the symptoms would have appeared more promptly  the man would have been in distress and had shortness of breath. He also said that if the pool playing had been the cause of the failure it would have occurred during the game, or at least the symptoms would have appeared then. He stated that a quiet death in bed because of heart failure was not unusual. This specialist concluded by saying he could not tie in the fall or the pool game with the heart failure with any reasonable certainty, that it was only coincidence, and that he thought what caused the death from the heart disease was some unknown factor which was present during Simpkins' sleep.
It is safe to say that the testimony of the heart specialist who testified for the claimants is the only evidence of a causal relation between the fall and the subsequent death from heart failure.
Medical testimony in workmen's compensation cases is subject to the substantial evidence rule. Martin v. Board of County Commissioners, Fla. 1955, 79 So.2d 513. Further, although this Court does not bind a claimant to the burden of proving his claim by a preponderance of the evidence, a claimant cannot recover on mere speculation or conjecture. Johnson v. Dicks, Fla. 1954, 76 So.2d 657. A claimant must prove a causal connection between his employment and the injury for which compensation is claimed by clear evidence. Superior Mill Work v. Gabel, Fla. 1956, 89 So.2d 794. There is no presumption that an injury, the death in this case, is causally connected to the employment. Pridgen v. International Cushion Co., Fla. 1956, 88 So.2d 286. Rather the burden is on the claimant to establish a causal connection between his injury and *561 his employment. Reed v. Brinson Electric Co., Fla. 1951, 50 So.2d 877.
Viewing the testimony of the claimants' heart specialist in the light of the above stated rules of law we must conclude that it does not constitute competent substantial evidence sufficient to establish a causal relation between the employment and the subsequent heart failure suffered by the deceased claimant.
In his testimony, the claimants' heart specialist, stated that he believed
"that the shock of the fall and the pain induced, the pain being, I believe largely in his left hip and left leg in this case, could easily have been the trigger mechanism that threw him over the critical line, exceeding his critical diminished cardiac reserve and putting him into actual heart failure."
On the question of shock from the fall and its relation to the heart failure he was asked a question and replied as follows:
"Q. Well, if you feel that the shock he suffered immediately following the fall as a result of this fall he described to you contributed to the onset of the fatal heart attack, why didn't it occur right there and then on the spot? A. No, the point I tried to make, and I probably didn't make it clear, is that it is not the shock that occurred immediately afterwards. Obviously, he didn't have much. He had little or perhaps none then; it took time to build up. It takes time for pain to exert its affect. Pain for five or ten or 15 minutes will do one thing for a patient, but pain that lasts 24 or 48 hours has a cumulative effect. It makes them tired and fatigued. It's more of a stress and strain on a system. And I think it was only after he felt the pain for a long period of time, and that I think is the usual history, and he may have been somewhat nervously upset. He likely was, I would think after that had had a chance to exert itself for a long period. Then and only then did he actually develop signs of heart failure."
It is clear from the foregoing testimony that the witness assumed that the deceased claimant suffered pain, nervous tension and anxiety, but the record in this cause is void of any evidence to support his assumption. In fact the record, particularly the statement of Dr. Herrero, the doctor who examined and treated Simpkins for his skinned knee and the testimony of John Offret, indicates that Simpkins did not suffer from pain, nervousness or anxiety, but was normal, except for having a skinned leg and limping slightly. Even if the specialist were correct in assuming such facts to exist, such assumption would give way to the positive evidence showing they did not exist.
It is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value. It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion.
For the reasons above expressed we are allowed to give little, if any, value to the opinion and conclusion of the claimants' specialist.
There is also another reason that prevents our accepting the testimony of this witness as clear evidence of the causal relation between the fall and the death of Simpkins by heart failure.
This specialist testified that Simpkins, the deceased claimant, had the heart of a person a hundred years or more in age; that because of the condition of his heart, Simpkins had a diminished cardiac reserve; that he did not know and no one knew how close to the line of heart failure Simpkins had been from day to day; that almost anything might push him over the line and *562 bring about the heart failure in Simpkins; and that the question of the triggering mechanism in heart failure is one of considerable speculation "and we are never really sure what it is."
As we review the testimony of the specialist, produced by the claimants, he honestly states that the question of what caused or "triggered" the heart failure to occur when it did is not one of reasonable probability but is speculative. In the absence of facts which would show that following and as a result of the fall the deceased claimant suffered shock, pain, nervousness or anxiety, which would support the specialist's conclusion and which would remove it from the area of speculation, we cannot give it the weight of substantial evidence.
Where the evidence is clear that a claimant is afflicted with a preexisting heart disease and that because thereof "almost anything might bring" about heart failure, it is not sufficient to show merely that the claimant suffered a relatively minor fall and died within 48 hours from heart failure. There must be some substantial evidence which tends to show, not with certainty but with reasonable probability that the fall either directly caused or set in motion other conditions which caused the heart failure. It is not contended that the fall damaged the heart or directly caused the heart failure. No evidence is presented to show that shock, pain, nervousness or anxiety followed the fall such as would probably "trigger" the heart failure.
The Workmen's Compensation Act, F.S.A. § 440.01 et seq., does not make industry the insurer of the lives of its employees and we cannot do so by judicial decree. Yet if we were to hold an employer responsible for the death of an employee without requiring proof that there was a causal relation between the employment and the heart failure in this case we would be placing such a burden on the employer.
In reaching our decision we have not overlooked the rule that the evidence is sufficient if it will support an inference of causal relation, nor have we ignored the rule that we will not disturb the findings of fact of the Deputy Commissioner if there be substantial competent evidence to support his findings.
For the reasons above stated the certiorari is granted and the order of the Full Commission is quashed with directions to enter an order quashing the order of the Deputy Commissioner.
TERRELL, C.J., and THOMAS, HOBSON and DREW, JJ., concur.