O’CONNELL, Justice.
In this workmen’s compensation case the claimant, Earl R. Thompson, was awarded additional compensation benefits in an order by a deputy commissioner which was affirmed by the Florida Industrial Commission, with one member dissenting. Petitioners are the employer, Montclair Homes, Inc., and its carrier, United States Fidelity and Guaranty Company.
Claimant was injured on June 18, 1958 while employed by petitioner as a carpenter. The blade of a power saw cut a gash in his left leg on the outer side, just above the knee. He was hospitalized immediately and treated by Dr. Leonard Hattaway. He remained in the hospital some 28 days.
On September 9, 1958 claimant returned to work with the petitioner, who had voluntarily furnished medical treatment and paid compensation for temporary total disability for the period from June 22, 1958 until September 9, 1958.
In June 1959, a year after the accident, claimant returned to Dr. Hattaway for treatment. At that time he had ulcers on his left leg, on the inner side just above the ankle. He informed the doctor the ulcers had been on his leg some three or four months, which would have meant they appeared some eight or nine months following the accident.
Claimant’s ulcers were treated by Dr. Hattaway for a period of time. In September 1959 claimant commenced treatments by Dr. W. F. Evans who on January 19, 1960 referred him to a general surgeon, Dr. C. A. Asters. Dr. Asters excised the ulcers and performed skin grafts over the area. As of the date of hearing before the deputy it appeared that the surgery and skin grafts were successful.
Petitioners controverted claimant’s claim for additional benefits on the ground the ulcers were not resultant from the accident of June 18, 1958.
*306 The deputy held a hearing on the claim and heard the testimony of claimant, Dr. Evans, Dr. Asters, and Dr. Hattaway, among others.
Dr. Hattaway expressed the opinion claimant’s ulcers were related in no way to the industrial accident but rather resulted from an arteriosclerotic vascular insufficiency. He was of the opinion this circulatory deficiency pre-existed the accident and based such upon the history given to him by the claimant and upon several objective tests which he made. He testified that claimant told him he had come to him, in June 1959, primarily because of cramps he suffered in both of his legs, and also because of the ulcers. Claimant told him he had suffered from the cramps for a period of time beginning prior to the accident.
Dr. Hattaway, who saw claimant several times each day he was in the hospital because of the cut, said that claimant related to him no sudden, excruciating pain in his left leg such as would have occurred had a blood clot lodged there and he could recall no complaints being made while claimant was hospitalized as to the area where the ulcers subsequently appeared. The doctor stated that when claimant returned to him in June 1959 with his complaints of leg cramps and ulcers, he, the doctor, reached the opinion the trouble was the result of the long standing circulatory disorder. As noted, he based this on several objective tests, besides claimant’s history, one being the fact the cramps appeared in both legs. Another test Dr. Hattaway performed was to feel claimant’s feet. He reported that in June 1959 they were cool to the touch and this fact indicated there was poor circulation of blood in the feet. He prescribed for claimant vasal dilators to improve that circulation.
Dr. Hattaway testified that when claimant returned to his office the following month he reported his legs were much better. The doctor found his feet were warmer to the touch.
This witness also testified that it was not possible for a blood clot, or embolus, other than one of microscopic size, to travel from the area of the cut on the outer side of the left leg to the area of the ulcers on the inner side of that leg.
Dr. Evans, claimant’s witness, disagreed with Dr. Hattaway on several points. He reached the conclusion claimant had no circulatory disorder, because claimant had related no history to that effect to him and when he saw claimant, claimant’s feet were warm to the touch. This was at a time subsequent to the time Dr. Hattaway prescribed the vasal dilators and subsequent to the time Dr. Hattaway had noted claimant’s feet no longer felt cool to the touch.
Dr. Evans disagreed with the other objective tests which Dr. Hattaway had employed to ascertain whether claimant had a circulatory deficiency.
It was Dr. Evans’ opinion that it was possible for a blood clot from the area of the cut to travel to the area of the ulcers. He said that claimant gave to him a history of experiencing a sudden, excruciating pain in his left leg, in the vicinity of the area where the ulcers subsequently appeared, three or four days after being hospitalized with the cut. He concluded claimant had sustained a vascular arterial accident, an embolus, which had come from the area of the injury.
Dr. Asters, who performed the surgery on claimant’s ulcers, shared the opinions of Dr. Evans, but was less positive, admitting to some uncertainty as to the cause of the ulcers.
Claimant’s testimony in some respects contradicted the histories he had purportedly given to both Dr. Hattaway and Dr. Evans. He said he first noticed the ulcers about the time he returned to work, which was September 1959, some three months after the accident. He did not testify that he had experienced, while in the hospital on the first occasion, any sudden onset of severe pain in the area where the ulcers later appeared.
*307 The deputy’s conclusion was that the industrial accident was causally related to the leg ulcers and he ordered the payment of additional compensation benefits.
Upon review, the commission affirmed, with one member dissenting. We are largely in accord with the dissenting member’s opinion, the bulk of which follows:
“I would agree with the majority of my colleagues if it were not for the fact that this case falls squarely within the doctrine enunciated by our Supreme Court in Arkin Construction Company v. Simpkins, Fla.1957, 99 So.2d 557. The essential point in the Arkin case is that if an expert witness’ conclusions are not based upon established fact, the conclusion must fall. To me, this is the essential point involved in this case. The Deputy, admittedly, in his Order bases his conclusions upon certain testimony adduced from Dr. Evans and Dr. Asters. For instance, he makes a finding of fact that Dr. Evans testified in his opinion the ulcerations were a result of a vascular accident in which an embolus originating from the area of the original injury in the thigh lodged in the area of the leg above the calf. Yet there is nothing in the record, first, to prove that an embolus did occur and/or, secondly, if an embolus did occur, same was caused from the accident. It is elementary then that such testimony is based upon pure speculation and supposition ; not only did the witness have to ‘guess’ that the disability was a result of an embolus, but he had to further 'guess’ that the embolus originated from the accident. It is patent that this testimony is nothing more than gross speculation and a valid conclusion cannot under the law enunciated in the Arkin case, stand upon testimony of this nature.
“There exist numerous other facts, forming a part of the doctor’s predicate for his conclusion, which are not supported by the record * * *. It was ■ also assumed that claimant’s feet were continuously warm, thereby indicating adequate circulation. However, the record clearly reveals that sometime prior to the examination by Dr. Evans, claimant’s feet were cold and that it was not until Dr. Hattaway administered vasa dilators to improve circulation that the claimant’s legs became warmer. Thus, it appears Dr. Evans assumed that claimant’s feet had not been cold simply because they were not cold in September of 1959. It is unnecessary to recite other instances and assumptions made by the doctor which are not supported by the record. It is interesting to note what our Supreme Court had to say in the case of Harris v. Josephs of Greater Miami, Inc., Fla.1960, 122 So.2d 561, to-wit:
“ ‘[1] Petitioner in effect urges that where an injury is conclusively shown and a logical cause for it is proven as arising out of claimant’s employment a presumption arises of causal connection and the burden shifts to the one who seeks to defeat recovery to establish proof that another cause is more logical and consonant with reason. In cases involving diseases or physical defects of an employee as distinguished from external occurrence to an employee such as an automobile accident claimant must prove a causal connection other than by merely showing that it is logical that the injury arose out of claimant’s employment or that by a “preponderance of probabilities” it appears that it arose out of such employment. There must be some clear evidence rather than speculation or conjecture establishing a causal connection between a claimant’s injury and her employment. Pridgen v. International Cushion Company, Fla., 88 So.2d 286, Tampa Ship Repair & Dry Dock Co. v. Jordan, [Fla.App.,] 107 So.2d 40, Arkin Construction Company v. Simpkins, Fla., 99 So.2d 557, 561.
*308 “ ‘[2, 3] Medical opinion should follow this same rule based on reasonable medical certainty. The opinion of an expert is not sufficient to eliminate the necessity of proving the foundation facts necessary to support the opinion * * *’ (Emphasis supplied) For these reasons I would reverse the Order of the Deputy Commissioner and dismiss the claim."
While it was established that an ulcer such as the ones claimant had resulted from death of tissue and that an embolus lodging in and blocking a blood vessel could cause such tissue death, it was not established that in this instance the cause of the tissue death was such an embolus or that an em-bolus had in fact occurred. There was conflicting argument by the medical experts as to the possibility of an embolus from the wound area traveling to the ulcer area.
In our view the record clearly supports the conclusion that the medical testimony upon which the award was based was speculative and conjectural. Even resolving in claimant’s favor those facts as to which there was before the deputy evidence on both sides, the fact remains that there was no proof that the ulcer was caused by an embolus; it was not shown with reasonable medical certainty that the ulcers in this instance resulted from an embolus obstructing the circulation of blood in the area of the idcers. There was no competent substantial evidence according with logic and reason that if an embolus was involved it originated in the area of the cut The finding that such was the case necessarily was based upon speculation and supposition. The evidence before the deputy cannot be said to establish with reasonable medical certainty that the industrial accident caused the ulcers on claimant’s leg.
Thus on the authority of Arkin Construction Co. v. Simpkins, Fla.1957, 99 So.2d 557 and Harris v. Josephs of Greater Miami, Inc., Fla.1960, 122 So.2d 561, the petition for writ of certiorari is hereby granted and the order of the commission affirming the award of additional compensation benefits is hereby quashed. The cause should be remanded with directions for the commission to reverse the deputy’s order and to dismiss the claim.
It is so ordered.
ROBERTS, C. J., and TERRELL, THOMAS and THORNAL, JJ., concur.