ON REHEARING
ROBERTS, Justice.
This workmen’s compensation case is the result of a compensable injury sustained by petitioner who was working as a waitress for the employer, Kapok Tree Inn, when on April 26, 1959, she accidentally spilled a pot of hot coffee into the front of her dress which resulted in second and third degree burns to her left breast. While hospitalized petitioner experienced a drug reaction to injections of certain antibiotics which caused a severe rash to break out “on her buttocks, the inner sides of her arms and around the vulva.” Petitioner was discharged from the hospital on May 6, 1959, but a recurrence of the skin condition forced her to be readmitted for a period from May 10 through May 16, 1959.
Subsequently, in July of 1959, while attending her mother’s funeral in Chicago, petitioner began to have kidney trouble. She received medical treatment in Chicago, with the medical report revealing that she was treated for pain and frequency of urination, blood in urine and a generalized rash on her body. After her return to Florida, petitioner was referred to Dr. Gor-day, a well known urologist. Dr. Gorday became petitioner’s treating physician in November 1959 and continued as such to the time of the taking of his deposition in December 1962. This specialist in the urological field diagnosed the kidney involvement as a stricture of the urethra, recurrent pyeleonephritis (i. e. a type of kidney inflammation) and glomerulonephritis (i. e. an inflammatory involvement of the kidney at the point at which urine is initially elaborated from the blood stream). The cause of pyeleonephritis is a bacterial infection and although the cause of glomerulonephri-tis is not well established, present theory appears also to tie it to an infection in the body. The symptoms of these diseases are those recorded in the Chicago medical report, supra.
A claim was filed and respondent-employer controverted it on the ground that there was no causal relationship shown between the kidney involvement and the compensa-ble accident of April 26, 1959.
There was a conflict in the medical testimony. The deputy commissioner accepted and relied upon Dr. Gorday’s testimony and made the following express findings:
“As a direct and proximate cause of the second and third degree bums of the left breast suffered by Claimant, and a drug reaction to a penicillin injection, Claimant suffered a mild stricture of the urethra, acute and chronic pyeleonephritis, and glomerulonephri-tis.
*831 “It is the express finding of the undersigned Deputy Commissioner that Dr. Gorday, the attending physician in this cause, who has treated the Claimant for a period of over three years, is in a better position to evaluate the Claimant’s condition, diagnosis, and the causal relationship of her accident and injury, and in this sense the undersigned Deputy Commissioner confirms and ratifies the opinion of Dr. Gorday oVer those of the examining physicians who have testified on behalf of the employer and/or carrier.
“It is the express finding of the undersigned Deputy Commissioner that the Claimant did not suffer from any urinary difficulty prior to the accident and injury in April of 1959, and despite repeated examinations by Dr. Myhree and examinations by Doctors Grau and Bowman, no cause has been established for the Claimant’s urinary difficulty, other than the burn and drug reaction which the Claimant suffered as the result of her accident and injtiry”.[1] (Emphasis added.)
Upon review the full commission reversed the deputy commissioner and in so doing, stated:
“It appears to us that Dr. Gorday has assumed certain facts which were not substantiated or proven by the- evidence. He relies primarily on the fact that these two diseases were caused by an ‘infection’; yet there is nothing in the instant record, either by inference or otherwise, that claimant had an infection. Thus,-Dr. Gorday’s testimony becomes speculative for the reason that his hypothesis is based upon a fact not substantiated. Furthermore, he never, at any time during the course of his testimony, stated that there was a ‘probable’ causal relationship between claimant’s trauma, that is, the burn to her breast and the kidney infection. The most the doctor would state was that it was ‘possible.’ Recovery for an infectious disease should only be allowed where a ‘preponderance of probabilities is shown.’ ”
After the reversal of the deputy’s award by the full commission claimant filed her petition for a writ of certiorari- in this court. We examined the record and concluded that an oral argument would not be necessary and perhaps not helpful inasmuch as the decision ultimately would turn upon the depositions of the physicians, particularly the deposition of Dr. Gorday, and that since such depositions were rather technical it seemed they would not lend themselves very well to oral argument. We did realize that the case was a close one in view of the fact that the full commission had reversed the deputy upon his findings of facts. '
Petition for rehearing was filed on November 3, 1964, which rehearing was granted December 8, 1964 and the cause set for oral argument on January IS, 1965.
It appears that there are two questions presented for our determination: (1) Did the claimant suffer from an infection; (2) Was claimant’s kidney condition causally related to her compensable accident and injury?
After having heard the arguments in this case and having reconsidered the record, we are of the opinion that the full commission erred in finding that “there is nothing in the instant record, either by inference or otherwise, that claimant had an infection”. We deem it sufficient to quote the following from the testimony of Dr. Myhree:
“Q Now, the white cell count that you mentioned from the second hos *832 pitalization is indicative of infection?
“A Of low-grade degree.
“Q Now, that low-grade infection could be attributable to the bum?
"A Yes.”
Moreover counsel for the employer-carrier admitted in argument before the court that claimant had an infection, but he contended that there is no testimony in this record which is both competent and substantial to show a causal relationship between the infection or kidney involvement and the compensable accident.
Since it now appears rather clearly that claimant did suffer from an infection, the premise upon which the full commission largely based its finding that Dr. Gorday’s testimony was speculative must fall.
It is true the full commission also found that the most Dr. Gorday would state was that it was “possible” that there was a causal relationship between claimant’s trauma, that is, the burn to her breast, and the kidney infection. In support of this finding the full commission quoted from the testimony of Dr. Gorday but failed to include the statement made by the doctor in his report of November 18, 1959, which was admitted in evidence, which is:
“Patient had no genitourinary troubles prior to her present injury. The allergic reaction caused this swelling in various portions of her body and could have caused edema and swelling of the urethra. Cortisone is well known to also cause edema of various portions of the body and to reduce one’s resistance to bacterial infection. Under these conditions one could rear-sonably assume that her urinary troubles are secondary to the penicillin reaction and the cortisone therapy used to counteract the allergic reaction. It is also quite likely that the patient would not have had any urinary troubles if she had not had the injury and the complications thereof.” (Emphasis added.)
We have not overlooked the decision of this court in Arkin Construction Company v. Simpkins, Fla., 99 So.2d 557, in which we held that medical testimony in workmen’s compensation cases is subject to the substantial evidence rule.
There is no contention that Dr. Gorday’s testimony is not competent, so we turn to the question whether it is substantial.
In the case of Carraway v. Armour & Co., 156 So.2d 494, we held that the testimony of Dr. Biggane was substantial. We quote the testimony of Dr. Biggane which this court approved as being substantial and therefore sufficient to meet the rule laid down in the case of United States Casualty Company v. Maryland Casualty Company, Fla., 55 So.2d 741:
“Q. Do you think his lifting and work as such, the type of work he was employed in, aggravated it?
“A. It would be my opinion that that could happen.
“He further testified: ‘To determine whether a hernia ensued from the pain in the stomach is difficult. * * * From this type of work and with the findings I subsequently found in operation, I can see how lifting could have made the condition he may have had before or could have helped to cause the condition that he subsequently had, depending somewhat upon what one’s opinion is as to the cause of these hernias. There is a controversy as to whether they may not have been there all their lives or whether they develop as time goes on. I believe, however, though, that lifting could have made it worse in either case.’ ” (Emphasis added.)
The expressions “one could reasonably assume” and “quite likely.” used by Dr. Gorday and which expressions we have heretofore quoted are considerably stronger *833 than the several expressions of Dr. Big-gane in the Carraway case such as “could happen”, “could have”, “could have” and again “could have”. The declarations of Dr. Gorday must be classified as “probabilities” rather than “possibilities”.
We quote with approval the observations and the pronouncement which we made in our opinion in the Carraway case:
“The deposing surgeon is a member of an honorable and learned profession. We have witnessed in our day the trained and skilled hand accomplish the well-nigh miraculous. He has relieved pain and extended life, yet withal unto this profession the oracles of God have not been given. In intellectual honesty these gentlemen cannot speak with infallibility. They diagnose to the best of their ability, not venturing opinions of absoluteness. So it was with Dr. Biggane, who could not positively and without qualification say that the lifting of any piece or pieces of beef caused the paraduodenal hernia or aggravated a preexisting condition. He testified guardedly and with commendable reserve; no more could be demanded of him. * *
We must always keep in mind our holding in the case of Lyng v. Rao et al., Fla., 72 So.2d 53:
“Even if the cause was doubtful it would be our duty under the law and the basic philosophy of Workmen’s Compensation Acts to resolve such doubt in favor of the claimant.”
The full commission fell into error when it failed to follow our decision in the Car-raway case and, of course, it also erred in disregarding the rule laid down by our decision in the United State Casualty Co. case.
The order of the full commission is hereby quashed with directions that the award made by the deputy commissioner be reinstated.
It is so ordered.
DREW, C. J., and THORNAL and ERVIN, JJ., concur.
THOMAS, O’CONNELL and CALDWELL, J., dissent

. “ * * * where a logical cause was shown for the injury, it became a responsibility of the carrier or employer to overcome such proof by showing that an-otber cause was more logical and consonant witb reason.” Johnson v. Dicks, Ha., 76 So.2d 657, 662.