THORNAL, Justice.
We have for review by a petition for certiorari an order of the Florida Industrial Commission which reversed a Deputy’s award of Workmen’s Compensation benefits.
Myrtle Irene Tressler, now deceased, was employed as a waitress, cook, dishwasher and cashier by the respondent Toddle House Corporation. We will refer to her as the claimant.
On or about November 26, 1964, while in the course of her employment, Mrs. Tressler suffered an episode of contact dermatitis on her hands. Her employer furnished remedial treatment under the care of Dr. Mitchell. During this period of treatment she was paid temporary total disability benefits for a period of five weeks. She then returned to work but was subsequently discharged. On June 4, 1965, following her discharge, a claim was filed alleging inflammation, loss of fingernails, swelling, scaling, and peeling of both hands, resulting from the use of “sudsy ammonia” during her previous work with the respondent. The employer thereupon reinstated temporary total disability benefits. It furnished remedial care under the direction of Dr. Farrington, a Commission-appointed dermatologist. He examined the claimant initially on June 18, 1965, and continued treatments. However, on November 23, 1965, Dr. Farrington discharged the claimant as cured. The employer discontinued compensation payments on November 24, 1965. The claimant then renewed her claim on December 14, 1965. A hearing was held on March 31, 1966. The Deputy entered an award, finding that the claimant was still temporarily totally disabled due to articular irritation (pain in the joints) caused by the original episode of *388 contact dermatitis. The Full Commission reversed, holding that the order of the Deputy was not supported by competent substantial evidence with regard to the industrial origin of the claimant’s condition. It is this order which we now review.
The crux of the case is whether the claimant’s original skin condition had been cured when she was discharged by Dr. Farrington on November 23, 1965. The claimant testified that at that time the joints of her hands and fingers were still sore and painful and that, actually, her hands had not been cured. During the period of treatment by Dr. Farrington the claimant was referred to Dr. Raybin, an orthopedist, who examined her on September 23, 1965. In a written report filed with the Deputy at the hearing, Dr. Ray-bin expressed the view that this claimant suffered articular irritation secondary to her skin problem. It was his opinion that the pain in the joints would subside as the problem cleared. He thereby related her whole problem to the initial contact dermatitis. At the hearing Dr. Farrington stated that the skin condition then exhibited was probably due to contact with soap or some similar substance at home. Dr. Bowen, another dermatologist, saw the claimant on one occasion on January 28, 1966. He stated the view that the original contact dermatitis was industrial in origin. However, he felt that on the date of examination her condition was due to neuroderma-titis, a nervous condition. Nevertheless, Dr. Bowen conceded that some doctors would doubtless take a contrary view and trace the claimant’s condition directly to the original industrial episode.
By a carefully drafted, comprehensive order the Deputy Commissioner evaluated all of the evidence and made extensive findings. He expressly accepted the opinion of Dr. Raybin in preference to that of Dr. Bowen and explained why. Similarly, he accepted Dr. Raybin’s opinion in preference to Dr. Farrington’s to the extent that the two conflicted. He took cognizance of the presence of the claimant herself and the condition of her hands and concluded that her disability was a direct result of a long siege of contact dermatitis. He further found that her condition was not the product of any subsequent intentional exposure, although he recognized that it was almost humanly impossible for a woman of her status to avoid house work and the use of soap and water. The Deputy, after extensive findings, reinstated compensation for temporary total disability commencing on November 25, 1965, and continuing until maximum medical improvement had been reached. He directed additional remedial treatment by Dr. Farring-ton and Dr. Raybin. He retained jurisdiction for the purpose of handling any necessary additional orders.
Our examination of this record leads us to conclude that the Deputy’s findings were adequately supported by competent substantial evidence which accorded with logic and reason. The evidence here was neither speculative nor conjectural as in Arkin Construction Co. v. Simpkins, 99 So.2d 557 (Fla.1957), relied upon by the Full Commission. In the instant case, the Deputy was presented with conflicting opinions by competent doctors. He accepted the one and rejected the other. He explained why. He acted within the scope of his authority when he did this. Our examination of the order of the Full Commission suggests to us merely a disagreement with the conclusion reached by the Deputy, despite the fact that the evidence before him was adequate to support his judgment. In doing so, the Full Commission transcended the limitations on its own scope of review as prescribed by United States Casualty Co. v. Maryland Casualty Co., 55 So.2d 741 (Fla.1951). Its order therefore cannot stand.
During the pendency of this proceeding, Mrs. Tressler died in an automobile accident on November 5, 1966. Lester H. Paul was substituted as administrator of her estate. When this matter is returned to the Full Commission it may then be remanded *389 to the Deputy Commissioner to determine the proper recipient of the proceeds of the award. He will be authorized to conduct such further hearings as he deems necessary to accomplish this result.
The order of the Full Commission is quashed and the matter is remanded with directions to reinstate the order of the Deputy.
It is so ordered.
THOMAS, Acting C. J., ROBERTS, DREW and ERVIN, JJ., concur.