308 So.2d 159 (1975)
Elizada W. CROMARTY, As Widow of James Edward Cromarty, Deceased, Appellant,
v.
FORD MOTOR COMPANY, a Michigan Corporation, and Shaw & Keeter Motor Company, Inc., a Florida Corporation, Appellees.
No. T-473.
District Court of Appeal of Florida, First District.
January 14, 1975.
Rehearing Denied March 3, 1975.
William C. Pierson, Gainesville, and Robert W. Morrison, Jacksonville, for appellant.
*160 William M. Howell, of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, Jacksonville, and Joe C. Willcox of Dell, Graham, Willcox, Barber, Rappenecker, Ryals & Henderson, Gainesville, for appellees.
McCORD, Judge.
This is an appeal from the "Order on Post-Trial Motions and Entry of Final Judgment for Defendants" which set aside a jury verdict and judgment for appellant and entered judgment for appellees.
Appellant's husband's death resulted from an automobile accident in which he was driving an automobile manufactured by appellee, Ford Motor Company. The complaint was in two counts. The first count sought damages for wrongful death on a theory of breach of warranty. The second count sought damages for such death alleging that appellee, Ford Motor Company, negligently manufactured and/or designed the steering mechanism on the applicable automobile and also alleged that appellee, Shaw and Keeter Motor Company, Inc., was negligent in its inspection of the steering mechanism on the automobile. Immediately prior to the commencement of trial, appellant announced the withdrawal of allegations of negligence on the part of appellee, Shaw and Keeter Motor Company, thereby dismissing that appellee as to the second count. At the close of all evidence, the Court granted Ford's motion for directed verdict as to Count II, thereby removing the negligence issue from jury consideration, and denied Ford's motion for directed verdict on Count I. The jury returned a verdict for appellant and final judgment was then entered in favor of appellant and against appellees. Thereafter, on motions of appellees for judgment and alternative motion for new trial and after hearing thereon and on post-trial motions and jury interview relating to an alleged quotient verdict, the court entered its order here appealed from on post-trial motions and entered final judgment for appellees.
The central question in the case is whether or not decedent met his death as the result of an alleged faulty steering mechanism in the Ford automobile. On the evening of decedent's death, he had left his home at 9:00 p.m. located in the rural area of Alachua County to take relatives to his sister-in-law's home. On his return from this trip, he had stopped at a small store near Brooker, Florida, where he purchased a pack of cigarettes. He arrived at the store about 9:30 p.m. and left it for home about 10:30 p.m. proceeding down State Road 329 in the direction of his home. About one and one-half miles down the road at Blackenberry Pond the automobile ran off the left side of the road and was found the following day approximately in the center of the pond about 200 feet from the point of entry. Decedent's body was later recovered near the bank of the pond and the cause of death was determined to be by drowning. The edge of the pond was located approximately 15 feet from the edge of the pavement of the road where the car ran off. There were no witnesses to the accident, and investigating officers theorized that decedent swam from the car to the edge of the pond where he became entangled in weeds and drowned.
After the car was removed from the pond, it was discovered that its steering mechanism did not operate properly. Frank Flanigan, an engineer and an expert witness for appellant, inspected, tested and checked the automobile and found that the vehicle's loss of steering was the result of a broken adjuster nut located on the top of the steering gear box. The fracture of this nut would permit the worm gear in the steering gear box to back out of the box which in turn would result in a loss of steering. Further inspection of the car revealed there was no damage to the steering mechanism other than the fractured adjuster nut.
The question evolves down to (1) whether the nut was not reasonably adequate for its intended use and fractured as a result *161 thereof, thereby causing the vehicle to leave the road and plunge into the pond or (2) whether the decedent, through his negligent driving, caused the car to leave the road and break the adjuster nut by the force of the accident. There were no witnesses and the only means of determining the cause of the accident was through attempted reconstruction analysis from the known facts. Appellant, of course, had the burden of proving that the accident resulted from the fractured nut and in attempting to do so she necessarily relied upon witness Flanigan's testimony and opinion for such proof. In was his view that the adjuster nut had failed prior to the vehicle leaving the roadway. He testified that it was his opinion that the accident occurred as a result of the worm gear backing out of the gear box causing a loss of steering of the vehicle so that it left the roadway and went into Blackenberry Pond. In support of this opinion, he testified to a further opinion that from his review of the evidence and his examination of the vehicle, no stresses related to the accident could have put a loading on the wheel sufficient to cause the fracture. He felt that it was most likely that the adjuster nut had fractured sometime prior to the accident by stresses imposed upon it in driving situations such as striking a curb with the front wheels turned or parallel parking with the wheels bound by the curb where the nut did not completely fracture and the car continued to be driveable until eventually the nut completely fractured and permitted the worm gear to back out of the gear box in steering maneuvers with resulting complete loss of steering control, thereby causing the accident.
Harry Edmondson, mechanical engineer for Ford, on the other hand, testified that he thought the fracture of the adjuster nut occurred as a result of forces exerted against it when the car left the road and hit the ground and soft mud with the wheels turned which would put a tremendous force on the steering mechanism screw and push it up into the ball bearing and into the adjuster nut. It was his opinion that the nut was intact when the vehicle left the road but that it fractured as a result of the forces involved in the accident after the vehicle left the road. Evidence was presented by appellant that there were some weaknesses in the adjuster nut, but evidence presented by Ford was to the effect that the nut was not designed to withstand great stress because it does not have great force applied to it; that this assembly has been used not only by Ford for a number of years, but also by General Motors; that the only time any strain would be put on this nut would be in a situation in which the front wheels were bound in a stationary position such as against a curbing and the steering wheel was turned to the left with great force (greater force than a driver could place upon it) or where the front wheels, in a turned position, hit something with great force. It is clear from the evidence that very little, if any, stress is placed on this nut in turning to the right or left in ordinary driving. There would be no pressure whatsoever on the adjuster nut on a right turn and very little on a left turn. Force to any degree would occur only if the front wheels were bound as above stated or were turned all the way to the left (to their left extremity) with great force or hit something with great force while the front wheels were turned.
The only foundation for the jury verdict in favor of appellant is the conclusion reached and testified to by expert witness Flanigan, and his conclusion is based upon pure speculation and not upon evidence which is in the record. There is no evidence that at any time prior to the accident great force was placed upon the steering wheel of this vehicle while the front wheels were bound or that the front wheels hit anything with great force which would cause the fracture. It is just as easy to speculate that the adjuster nut was fractured (as testified to by expert witness Edmondson) as the result of force applied to the front wheels by the accident itself. *162 As stated above, the burden was upon the plaintiff to prove that the adjuster nut broke causing the accident and it was not upon the appellees to prove the contrary. The trial judge in his "Order on Post-Trial Motions and Entry of Final Judgment for Defendants" found as follows:
"1. It is the finding and ruling of the Court that the verdict for the Plaintiff was based upon insufficient evidence as to the proof of any breach of warranty or defect in the manufacture or design of the steering mechanism of the involved vehicle; that neither the expert testimony or other evidence in the case, nor the reasonable inferences to be drawn therefrom could, in law, support a verdict for the Plaintiff. Consequently, the respective motions for judgment under Rule 1.480(b) are hereby granted, the verdict and the final judgment entered herein on the first day of December 1972 is hereby vacated and set aside and final judgment entered for the Defendant; that the Plaintiff Elzada W. Cromarty, as widow of James Edward Cromarty, deceased, take nothing by this action and that Defendants Ford Motor Company, a corporation and Shaw & Keeter Motor Company, Inc., a corporation, go hence without day."
The trial court further ruled as follows:
"2. Were it not for the fact that the evidence, in the opinion of the Court was so wholly insufficient to support a verdict for the Plaintiff as above described, the Court would be compelled to grant a new trial of the issues herein for the reasons that (a) the verdict was contrary to and against the manifest weight of the evidence in view of its weak and speculative nature (as being supportive of the Plaintiff's theory or contention) when taken into consideration with the evidence as a whole on the issue of liability; and (b) it was manifest from the jury interview that the jury arrived at its verdict in an illegal and improper manner in that it was a quotient verdict contrary to the law in this regard and that the verdict rendered indicates that the jury was influenced by considerations outside the record and not in accordance with the Court's instructions."
The trial court was correct in awarding judgment for defendants (appellees).
As stated by the Supreme Court in Arkin Construction Company v. Simpkins, Fla., 99 So.2d 557:
"It is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value. It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion."
In Harris v. Josephs of Greater Miami, Inc., et al., Fla., 122 So.2d 561, the Supreme Court said:
"The opinion of an expert is not sufficient to eliminate the necessity of proving the foundation facts necessary to support the opinion."
Later, in Monsalvatge & Co. of Miami, Inc., v. Ryder Leasing, Inc., Fla.App.3d, 151 So.2d 453, the court said:
"... the testimony of an expert, where hypothetical questions are posed, is based on a presumption that the evidence before the jury supports the factual statements in the hypothetical question. When the record is devoid of evidence supporting such statements, the testimony elicited by the question is rendered incompetent as without evidentiary foundation."
See also this court's opinion in Fletcher Co. v. Melroe Manufacturing Co., Fla.App. (1st), 238 So.2d 142, where we affirmed the trial court's setting aside a jury's verdict for plaintiff which was based upon opinion testimony of Frank Flanigan, his *163 opinion being based upon surmise and conjecture rather than evidence in the record.
We recognize that a motion for judgment notwithstanding the verdict should be resolved with extreme caution since the granting thereof holds that one side of the case is essentially devoid of probative evidence. We further recognize the trial judge is authorized to grant such motion only if there is no evidence or reasonable inferences to support the opposing position. Stirling v. Sapp, Fla., 229 So.2d 850. This, however, is such a case. From the evidence the jury had no way to resolve this case other than by speculation or reliance upon expert opinion based purely upon speculation.
In view of the foregoing, it is unnecessary that we consider the trial court's ruling on the post-trial motions relating to the alleged quotient verdict.
Affirmed.
RAWLS, C.J., and BOYER, J., concur.